# Reading *v.* United Traction Company, Appellant.

*Street railways—Municipalities—Duty to pave streets.*

A street railway company is bound to keep the portions of streets occupied by its right of way in good condition, even in the absence of any express contract or statutory direction to that effect.

In an action by a city against a street railway company to recover the cost of paving a portion of a street with asphalt, the city cannot recover unless the jury find (1) that the repairs made by the city were necessary and proper; (2) that the defendant had been notified by the city to repair the tracks by paving them with asphalt, and (3) that the repairing by asphalting was reasonable, necessary and proper, taking into consideration the condition of the rest of the street, and the condition in which the city was about to place it.

Argued Feb. 26, 1906. Appeal, No. 294, Jan. T., 1905, by defendant, from judgment of C. P. Berks Co., Sept. T., 1902, No. 16, on verdict for plaintiff in case of city of Reading *v.* United Traction Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Assumpsit to recover the cost of paving streets. Before ENDLICH, J.

The opinion of the Supreme Court states the case.

The court charged in part as follows :

[Were the spaces between the tracks of the traction company upon the streets that have been referred to here or upon any of them out of repair, so that they required repair, that repairs were at the time necessary? That is the first question which you will have to pass upon. I may say that there are a number of these streets, in fact there are nine stretches that are spoken of here as to each of which the plaintiff claims that the condition was such as to require repairs at the time, and asks for a verdict covering the amount that was spent by the city upon those stretches. There is Bingaman street from Canal to Sixth; there is Eighth street from Chestnut to Penn; there is Ninth street from Penn to Washington ; there is Tenth street from Penn to Washington; there is Eighth street from Penn to Washington ; there

is Washington from Fourth to Sixth; there is Sixth from Penn to Franklin; there is Fifth from Penn to Walnut, and there is Fifth from Pine to Laurel. There is a separate question arising under the evidence as to each of these, and upon each of them you ought to ask yourselves the question and come to a conclusion under the evidence according to the fair preponderance of it as to whether on that portion or on this portion of the various stretches that are here claimed for there was a necessity for repair or not. If there were any of these on which there was no such necessity, then you must negative that question as to those. If there were any of them as to which you find that there was a necessity, you will answer the question in the affirmative as to those.] [11]

Then you will come to the next question: Was the defendant company, the United Traction Company, notified by the city to repair those tracks by paving them with asphalt? You will remember, gentlemen, that the city had determined to pave these streets, those portions of them not occupied by the tracks, with asphalt, and as I have said to you, it is the business, the duty of the railway company to keep its portion of the streets in good repair in reasonable correspondence with the rest of the street. Now, was the traction company notified by the city to repair those portions of the streets by paving them with asphalt? I may say to you that whether the word " repair" was used in the notice is not a controlling question. The question is, was the traction company required to do something to those portions of the streets which were occupied by its road for the purpose of putting them in better condition? Whether the word "repair" or the word "repave" was used in the notice is not controlling. Nor is it necessary, of course, that in that notice the company should have been specifically informed by the city that its tracks or the portions between its tracks were out of repair. The railway company had charge of that and of course knew itself what the condition of its tracks was. The point is, was the railway company given notice that the city wanted it to do something there in the way of correcting evils that existed, and did it have a fair opportunity to do it? [12]

[As I told you, the city had a right to determine to asphalt the streets, that is to say, its portion of them; and it then be-

came the duty of the railway company, when notified, and if it was a fact that the portions of the street occupied by it were out of repair, to repair them in correspondence with the pavement which the city was putting on these streets. Now was it necessary, under all the circumstances, and was it proper that this repairing should be done by way of asphalting? You have heard what the testimony on that subject is. You have heard the testimony of certain experts as to the feasibility, the possibility, the reasonableness of the one kind of repairing or the other, whether it should be asphalt, whether it should be Belgium blocks, or a combination of both, or vitrified brick, or whether it was feasible and proper, according to approved usages and practices, to make a combination, if you may so call it, of cobblestones or hill stones and asphalt. You have heard the testimony on both sides of this question, and it will be for you to determine whether it was a reasonable thing for the city to pave these streets with asphalt, and would have been a reasonable thing to permit a repair of the spaces between the tracks by retaining the kind of pavement that was there before, or whether it was reasonable, necessary and proper to substitute in the place of that a repair by asphalting. It will be for you to say, under all the evidence, whether it was a reasonable and proper requirement for the city to put upon this railway company that in repairing that portion of the street which it occupies it should use sheet asphalt also.] [13]

Verdict and judgment for plaintiff for $13,727.85. Defendant appealed.

*Errors assigned* among others were (11–13) above instructions, quoting them.

*Jefferson Snyder* and *C. H. Ruhl*, with them *J. Milton Miller* and *R. L. Jones*, for appellant.—Wherever in any case any duty as to repairs or paving or repaving has come before the court such duty has always been asserted by this court to exist in the charter, the statute or the ordinance: Pittsburg, etc., Ry. Co. v. Birmingham, 51 Pa. 41; Phila. v. Ridge Ave. Pass. Ry., 143 Pa. 444; McKeesport Borough v. Ry. Co., 158 Pa. 447; Norristown v. Norristown Pass. Ry. Co., 148 Pa. 87; Phila. v.

Pass. Ry. Co., 169 Pa. 269; Phila. v. Hestonville, etc., Pass. R. R. Co., 177 Pa. 371.

*Isaac Hiester*, with him *William J. Rourke*, for appellee.—It seems to be settled, by an abundance of authority, that a railway company owes the public the duty of keeping in good repair that portion of the highway occupied by its tracks and sills: Pierce on Railroads, 245; Mills on Eminent Domain, sec. 198; Burritt v. City of New Haven, 42 Conn. 174; State v. Ry. Co., 38 Minn. 246 (36 N. W. Repr. 870); State v. Hoboken, 41 N. J. L. 71; Worcester v. Forty-second Street and Grand Street Ferry R. R. Co., 50 N. Y. 203; Laredo Electric & Ry. Co. v. Hamilton, 23 Tex. Civ. App. 480 (56 S. W. Repr. 998); Harrisburg v. Pass. Ry. Co., 1 Pearson, 298.

The repairs so made must be of such a character that the portions of the street occupied by the railway will reasonably correspond with the rest of the street, having proper regard to the travel on the street: McKeesport Boro. v. Pass. Ry., 158 Pa. 447; Sioux City Street Ry. Co. v. Sioux City, 138 U. S. 98 (11 Sup. Ct. Repr. 226); Lincoln Street Ry. Co. v. City of Lincoln, 84 N. W. Repr. 802; Boyer v. Reading City, 151 Pa. 185.

The city is not prevented from requiring the railway company to keep its portion of the street in good repair in reasonable correspondence with the rest of the street because the company which constructed the railway was required at that time to pave with cobblestones with or without an added requirement to keep such paving in repair: Com. v. R. R. Co., 27 Pa. 339; Johnson v. Philadelphia, 60 Pa. 445; Reading v. United Traction Co., 202 Pa. 571.

OPINION BY MR. JUSTICE BROWN, May 14, 1906:

The judgment recovered by the city of Reading against the United Traction Company was for moneys expended in doing that which, under the evidence and instructions of the court, the jury found ought to have been done by the traction company on those portions of the streets of the city occupied by it. The claim of the city is made up in part of the cost of paving with asphalt from the outside of the rails to the limit of the sills. As to this item, amounting, without interest, to $1,848.75,

the court instructed the jury to find for the plaintiff, for the manifestly correct reason that the street railway companies, which leased their lines to the appellant, had "assumed the duty of putting down asphalt pavement on the outside of their rails to the extent of the sills whenever the city might undertake to put down asphalt on the balance of the street." As to the remaining portion of the city's claim—$8,292.48—which the jury found it had expended in making necessary repairs on those portions of the streets between the rails, the appellant contends that there ought not to have been a recovery, for the reason that its duty as to the space between the rails is fixed by the charters and ordinances under which its tracks were laid on the streets, and as it is not expressly required by them to repair between the rails, it is not liable for the amount expended by the city in doing so.

The streets of a city belong to the state for the use of the people at large. To the municipality, as its agent, it commits the duty of at all times keeping them in proper repair for the convenience and safety of the public. This duty of the municipality does not shift, except when it is expressly or impliedly imposed upon another. Before the adoption of our present constitution street railway companies were authorized to occupy streets without municipal consent; now they can be authorized to do so only with such consent; but, no matter how authorized, the authority under which streets are occupied, unless expressly relieving such companies from the duty of keeping in repair those portions of the streets occupied by their tracks, carries with it a liability on their part to do so. When street railway companies occupy portions of streets, such portions are no longer in the free, unencumbered and exclusive use of the public, but to the companies is given not only a concurrent, but a superior right to use them, and with this right goes a corresponding responsibility. As between a street railway company and a municipality whose streets are occupied by such a company, the duty no longer rests upon the municipality of keeping in repair those portions of the streets used by the company, but devolves upon the company acquiring the right to use them for its corporate purposes. When the state gives up a portion of one of its highways to a particular use, without providing that what had been the duty of the munici-

pality as to it shall continue, such duty devolves upon the party acquiring the right to use it, and a street railway company given the right to use such portion of a street as is needed for its tracks, in taking charge of it, is charged with the duty of properly maintaining it. It is because the municipality, as the agent of the state, has charge of the streets, that it must maintain and keep them in proper repair, and when the state permits this charge, as to a portion of a street, to be committed to another, it must be understood as imposing upon such party the responsibility that formerly rested upon the municipality, unless in the grant, or in the municipal consent thereto, of the right to use a portion of the street, such responsibility is expressly withheld and its imposition continued upon the municipality.

In submitting the claim of the appellee to the jury they were instructed that the city could not recover, unless they found, first, that the repairs made by the city were necessary and proper; secondly, that the appellant had been notified by the city to repair the tracks by paving them with asphalt; and thirdly, that the repairing by asphalting was reasonable, necessary and proper, taking into consideration the condition of the rest of the street and the condition in which the city was about to place it. The findings of the jury on these three questions were in favor of the appellee.

We do not deem it needful to say more about this case. It is clearly ruled by the general principles announced in Reading v. United Traction Co., 202 Pa. 571, as is demonstrated in the opinion of the court overruling the motion for a new trial. In that case, in affirming the judgment below, we adopted, as correctly expressive of our views, the words of the present learned trial judge, that " It is recognized, with substantial unanimity, that a railway company, whether general or passenger, is bound to keep the portions of streets occupied by its right of way in good condition, even in the absence of any express contract or statutory direction to that effect: 2 Wood, Railroads, pp. 758, 760; Pierce, Railroads, p. 245; Mills, Em. Dom. sec. 198; Elliott, Roads and Streets, p. 591; Worster v. R. R. Co., 50 N. Y. 203; North Hudson County Ry. Co. v. Hoboken, 41 N. J. L. 71; Ry. Co. v. State, 87 Tenn. 746."

Judgment affirmed.