# Chambersburg Borough v. Chambersburg & Gettysburg Electric Railway Company, Appellant.

*Contracts—Street railway companies—Streets—Repairs — Common law duty—Ordinances—Special privilege—Derogation of public right—Construction—Strict or liberal intention—Construction by parties—Equity—Jurisdiction—Specific performance.*

1. A street railway company is under a common law duty to keep the portions of a street occupied by its right of way in good condition and repair.

2. The duty to repair where it exists extends to the replacement of an old pavement by a new one of a different and improved kind; materials should be used such as will correspond with the general condition of the street at the time the repairs are needed. While the company is not compelled to tear up a sound pavement of antiquated style and replace it with a different and better one, yet if a necessity for repairing the pavement within the right of way arises after an improved pavement has been laid in the remainder of the street by the city, the city may require the company reasonably to conform to such improved pavement.

3. A municipal ordinance granting a street railway a right to maintain tracks in a public street is a grant of a special privilege, affecting the general public interests and in derogation of the right of the public to the full and unobstructed use of the streets; its provisions must, therefore, be construed strictly against the grantee and liberally in favor of the public, and no privileges or exemptions will be deemed to have passed, unless given in clear and explicit terms.

4. A court of equity has jurisdiction to decree specific performance of a contract between a street railway company and a municipality, whereby the street railway company is required to keep the portion of the streets occupied by its right of way in proper repair.

5. In a suit in equity brought by a borough to compel a street railway company to pave certain streets between and adjoining its tracks with material similar to that used by the borough in paving the remainder of the highway it appeared that the ordinance granting the defendant the right to operate its railway upon certain streets provided that "the said company shall be required, at the time of construction of said railway between its tracks and for a distance of twenty-four inches outside of each rail, to pave with material or pavements similar to that now in use, or which may in the future be used or adopted by said borough, and keep and

maintain the same in good condition, so that driving on, off or across said track or tracks shall be safe and not inconvenient, and be constructed so as not to impede travel." At the time of the construction of the road plaintiff's streets were macadamized and defendant macadamized the space between its tracks. In 1913 plaintiff provided by ordinance for the repaving of certain streets with vitrified brick, and defendant thereupon repaved its portion of such streets with the same material. In 1916 plaintiff provided for the paving of certain other streets with vitrified brick and notified defendant to pave its portion of the highways with the same material. Defendant refused to comply with the provisions of the ordinance, on account of the "present financial condition" of the company. The lower court found that the streets referred to in the ordinance of 1916 were in need of construction and repair, and directed specific performance of the contract. *Held,* no error.

Argued March 5, 1917. Appeal, No. 382, Jan. T., 1916, by defendant, from decree of C. P. Franklin Co., Equity Docket, Vol. IV, page 1, in equity, directing specific performance of a contract, in case of the Burgess and Town Council of the Borough of Chambersburg v. The Chambersburg and Gettysburg Electric Railway Company. Before MESTREZAT, POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Bill in equity for specific performance of a contract between a municipality and a street railway company. Before GILLAN, P. J.

The opinion of the Supreme Court states the facts.

The court directed specific performance of the contract. Defendant appealed.

*Errors assigned* were various conclusions of fact and law, and the decree of the court.

*Walter K. Sharpe,* with him *O. C. Bowers* and *Irvin C. Elder,* for appellant.—The implied or common law liability on the part of a street railway company to keep the portion of the streets occupied by its tracks in proper repair is enforceable only in an action of assumpsit and

not by any proceeding for specific performance: Reading City v. Reading & Southwestern St. Ry. Co., 215 Pa. 132; Reading v. United Traction Co., 215 Pa. 250; North Braddock Borough v. Monongahela St. Ry. Co., 217 Pa. 27; McKeesport v. McKeesport & Connellsville Ry. Co., 213 Pa. 542; Chester City v. Union Railway Co. of Chester, 218 Pa. 24.

*Charles Walter,* Borough Solicitor, with him *Arthur W. Gillan,* for appellee, cited: West Chester Borough v. West Chester St. Ry. Co., 203 Pa. 201; McKeesport Borough v. McKeesport Pass. Ry. Co., 158 Pa. 447.

OPINION BY MR. JUSTICE FRAZER, May 7, 1917:

Defendant appeals from a decree of the Court of Common Pleas, directing specific performance of a contract by it to pave certain streets in the Borough of Chambersburg, between and adjoining its tracks, with material similar to that used by the borough in paving the remainder of the highway. The validity of the decree depends upon the construction of Section 3 of an ordinance of the municipality, adopted June 23, 1902, granting to defendant the right to construct and operate a street railway upon a number of the streets of the borough, subject to the conditions and restrictions therein mentioned.

The section referred to provides, inter alia, that "the said company shall be required, at the time of construction of said railway, between its tracks and for a distance of twenty-four inches outside of each rail, to pave with material or pavements similar to that now in use, or which may in the future be used or adopted by said borough, and keep and maintain the same in good condition, so that driving on, off or across said track or tracks shall be safe and not inconvenient, and be constructed so as not to impede travel." Section 17 of the ordinance provides that, in case of violation of any of its provisions by the street railway company, "the borough reserves the

right to terminate and cease all rights and privileges granted." The facts are not in dispute. They were found by the court below and were not excepted to. At the time defendant constructed its road, the streets of the borough were macadamized, and defendant accordingly macadamized the space between and along its tracks and maintained that part in substantially the same condition as the borough maintained the remaining portion of the street. In 1913 an ordinance was adopted providing for the repaving, with vitrified brick, of certain streets of the borough, including several on which defendant's tracks were laid, whereupon defendant proceeded to repave its portion of each street with the same material, in accordance with plaintiff's construction of Section 3 of the ordinance of 1902. In 1916 a second ordinance was adopted, providing for the paving of other streets with vitrified brick, which streets the court finds were "in need of reconstruction and repair"; defendant, however, on receiving notice to pave its portion of the highways to be improved, addressed a letter to the borough council stating its inability to comply with the provisions of the ordinance, owing to "the present financial condition" of the company. The borough thereupon instituted the present proceeding in equity, asking that defendant be required to pave between and along its tracks, in accordance with the provisions of the ordinance granting it the right to use the streets of the municipality. Defendant contends that, having paved its part of the street with the kind of material then used by the borough at the time its tracks were laid, and having maintained such paving in good condition, its whole duty in the matter was performed and no further obligation rests upon it to repave with a different material.

Aside from the question of contractual obligation, defendant was under a common law duty to keep the portions of the street occupied by its right of way in good condition and repair: Reading v. United Traction Co., 202 Pa. 571; Reading v. United Traction Co., 215 Pa.

250.    In the former case it is held the railway company's duty to repair involves something more than the mere preservation of the condition in which the street was found when first occupied by it. In that case the court below, in an opinion adopted by this court, in quoting from Philadelphia v. Thirteenth & Fifteenth Sts. Pass. Ry. Co. of Philadelphia, 169 Pa. 269, said (p. 574): "The duty to repair, where it exists, extends to the replacement of an old pavement by a new one of a different and improved kind......The company is bound to keep pace with the progress of the age in which it continues to exercise its corporate functions," and, further, referring to Elliott on Roads and Streets, pp. 594, 595, "the doctrine is laid down as the one deducible from the authorities, that a railway company, in respect to the condition of its right of way upon the streets of a city, is bound to repair but not to improve, but that the duty of making repairs requires them to be made in such manner and with such materials as will correspond with the general condition of the street at the time the repairs are needed; so that, whilst the company is not compellable to tear up a sound pavement of antiquated style and replace it with a different and better one, yet if a necessity for repairing the pavement within the right of way arises after an improved pavement has been laid in the remainder of the street by the city, the latter may require the company reasonably to confirm [conform] with such improved pavement. And it is pertinently observed at p. 594: 'If it be true that the company is not bound under the continuing duty to make repairs to correspond with the improved or changed condition of the street, then the practical result would be that it would be entirely released from its duty, since it is quite clear that repairs of any other character would be without value or service to the public.'"

The common law duty on the part of street railways is referred to because of its bearing on the intention of the parties in their dealings with each other in the

present case. The argument of defendant that it is bound to keep in repair only macadam pavement, regardless of the character of the remainder of the street, practically amounts to a contention that the company's liability is limited to an extent less than its common law duty, and that no higher obligation than that claimed is imposed upon it by the ordinance in question. The word "future," as used in the ordinance, is unlimited as to time, unless the natural meaning of the word is restricted by other provisions of the ordinance. Although the words "at the time of construction of said railway" may tend to indicate a limitation of the word "future," yet to so confine its meaning practically disregards the clause concerning the similarity of pavement "which may in the future be used or adopted." The words requiring paving "at the time of construction" of the railway are not rendered nugatory by giving the word "future" its natural meaning, as they may readily be construed as a wise precaution to prevent the company from delaying its part of the work, so important to the public, for an unreasonable time beyond the period allowed for construction of the road, and thus render "driving on, off or across said tracks" inconvenient and unsafe. The ordinance required the entire work to be complete and in operation within eight months from date of defendant's acceptance of its provisions in writing, which was to be made within ten days from its passage. It is not reasonable to suppose a provision requiring the company to pave with material similar to that which may in the future be used or accepted by the borough, was inserted merely for the purpose of covering possible changes in the short time elapsing between the date of the passage of the ordinance and the actual construction of the work.

As a further indication of the intent of the borough in granting the franchise, section 15 of the ordinance provides that "nothing contained in this ordinance shall be taken or construed to limit or restrict the Borough of Chambersburg in making and enforcing in the future

any additional regulations, respecting the construction, maintenance or operation of the said company's railway within the limits of the said borough, and the said borough reserves the right to require, by ordinance or resolution of its council, the adoption and enforcement of such regulations, at any time hereafter, and removing and replacing of the rails, tracks, ties, poles, cables, wires or other appliances, at any time located or erected by the said company, within the said borough, whenever, within the judgment of said council, the public interests shall require it."

The ordinance in question is a grant of a special privilege affecting the general public interests, and in derogation of the right of the public to the full and unobstructed use of the streets. Its provisions must, therefore, be construed strictly against the grantee and liberally in favor of the public, and no privileges or exemptions will be deemed to have passed unless given in clear and explicit terms: 19 Cyc. 1459; 28 Cyc. 883. Tested by these principles, the conclusion reached by the court below is correct. The ordinance contemplated the use or adoption of a different method of paving, consistent with the growth of the municipality, and the need incident to increased traffic in the future generally, and did not limit that term to the period fixed for completing the work.

This construction of the contract is further supported by the acts of the parties. Under the earlier ordinance, defendant, pursuant to notice from the borough, repaved the portion of the street within its control and supervision. With the contract and this construction of its provisions before them, the ordinance of 1916 was passed, and, upon defendant receiving notice to repave under the later ordinance, it declined to comply with the request solely on the ground of its "present financial condition." While defendant at this time offers an excuse for not having desired to enter into a controversy with the borough at the time the earlier ordinance was

adopted, the weight to be given such reason was properly for the consideration of the court below. We see no valid reason for changing the conclusion reached in the court below.

The jurisdiction of the court to specifically enforce a contract of this kind in lieu of leaving the borough to its remedy by doing the work and suing at law for the cost is amply supported by the case of Patton Township v. Monongahela St. Ry. Co., 226 Pa. 372.

The decree of the lower court is affirmed.