## New Cumberland Borough v. Valley Railways and Harrisburg and Mechanicsburg Electric Railway Company.

*Street railways—Boroughs—Pavement between and along tracks—Materials—Consent ordinance—Common law duty to repair, etc.*

1. In the absence of a consent ordinance of a borough requiring it, a street railway company is bound only to keep in reasonable repair that portion of the highway occupied by it.

2. Where a consent ordinance requires a railway company to maintain macadam between and along its tracks, it cannot later be required to replace the same with reinforced concrete unless the original pavement was of a sort that was unreasonably incongruous with that later adopted by the municipality and was practically incompatible with the new style of pavement adopted.

Bill to require repaving. C. P. Cumberland Co., June T., 1925, No. 1.

*Jacob H. Reiff* and *John R. Geyer*, for plaintiff.

*C. S. Brinton* and *Spencer G. Nauman*, for defendant.

EDW. M. BIDDLE, JR., P. J., March 2, 1926.—*Findings of fact.*

1. The plaintiff, the Burgess and Town Council of the Borough of New Cumberland, is a duly incorporated borough, located in the County of Cumberland, State of Pennsylvania.

2. Bridge Street is a public street of said Borough of New Cumberland, and, between the northern and southern limits of said borough, is a much-traveled thoroughfare. It is on State Highway Route No. 250, a part of the Susquehanna Trail, and a main-traveled route between Baltimore, York and Harrisburg.

3. The Harrisburg and Mechanicsburg Electric Railway Company, one of the defendants, is a street railway company chartered by the Commonwealth of Pennsylvania under the Act of 1889, by letters-patent under date of May 17, 1892, and authorized to operate, together with other lines, a street railway in and along Bridge Street, in the Borough of New Cumberland.

4. On Jan. 1, 1904, the Harrisburg and Mechanicsburg Electric Railway Company, by lease duly executed, with proper approval of the stockholders, leased all of its rights, property and franchises, then owned or to be thereafter acquired, to the Valley Traction Company, a motor-power company, incorporated by the Commonwealth of Pennsylvania under letters-patent dated Nov. 18, 1903.

5. On Jan. 20, 1913, the Valley Traction Company was merged into the Valley Railways, a motor-power company incorporated Jan. 27, 1912; the Valley Railways thereby succeeding to all the rights, privileges and powers of the Valley Traction Company, included among which was the lease from the Harrisburg and Mechanicsburg Electric Railway Company.

6. By ordinance duly passed and which was approved Aug. 9, 1895, the Borough of New Cumberland granted to the Harrisburg and Mechanicsburg Electric Railway Company, its successors or assigns, the right to construct, maintain and operate an electric railway, with the necessary tracks, turn-outs, sidings, and so on, on Bridge Street, from the bridge crossing the Yellow Breeches Creek, at the southern limits of the borough, to the northern limits thereof, paragraph (b), section 2, of said ordinance providing:

"Said company shall not disturb the grades of the highway within the borough to be occupied by its tracks, sidings, turnouts and switches; shall place and restore the same to the condition in which it finds them at the earliest date possible; shall macadamize between its rails and along the side thereof as far as its ties extend on all the streets occupied by it, and shall macadamize the sides as aforesaid with the same material as the other portion of the street, and shall keep and maintain the said portion of said street in perpetual good order and repair, and shall be subject in this regard at all times to the direction of the borough council."

7. By an ordinance duly passed and approved May 14, 1906, further permission was granted by the Borough of New Cumberland to the said Harrisburg and Mechanicsburg Electric Railway Company, its successors or assigns, to construct, maintain and operate an electric railway, with the necessary tracks, turnouts, etc., along Bridge Street, from a point of intersection with the tracks of said company, at the intersection of Third Street with Bridge Street, and thence along Bridge Street in a southerly direction to the southern limits of the said borough; section 3 of said ordinance providing as follows:

"That said company shall not change the grade of any streets to be occupied by its track, sidings, turnouts and switches, and shall replace and restore the same to the condition in which it finds them at the earliest date possible.

"And in case borough changes the grade in any streets at any time, the company agrees to change grades so as to conform to new grades.

"Said company shall macadamize between its tracks and along the sides thereof as far as its ties extend on said streets, and at the points where the crossings of the streets or alleys of the said borough are constructed over any streets, the said company shall make said crossings, in as far as they lie between the rails of its tracks and end of ties, of the same material as are used by the borough in the construction of the remainder of the crossings."

8. Under the consent ordinances recited above, the Harrisburg and Mechanicsburg Electric Railway Company, or its lessee, has operated and maintained an electric railway, with necessary tracks, switches, etc., from the bridge crossing the Yellow Breeches Creek, at the southern limits of the said borough, to the northern limits thereof.

9. On or about Dec. 7, 1920, the municipal limits of the Borough of New Cumberland were extended in a northerly direction 210 feet, and by said annexation the said distance of 210 feet was included within the borough limits, the portion so taken having formerly been a part of the Township of Lower Allen.

10. The Department of Highways of the Commonwealth of Pennsylvania, in pursuance of its general plan of road construction, determined to improve a portion of Route 250, including the part thereof lying within the limits of

the Borough of New Cumberland, by constructing, on a part thereof at least, a better and improved type of pavement, and in the latter part of the year 1925 said department advised the Borough of New Cumberland of its intention.

11. By due action of the said Department of Highways and of the plaintiff borough, contracts were entered into fixing the width of Bridge Street throughout its whole length in the borough at forty feet, and providing for the improvement thereof by the construction of two parallel strips of reinforced concrete paving, each having a width of nine feet, and said strips being ten feet apart, the cost of which was to be defrayed by the said Department of Highways; and the remainder of said forty feet, with the exception of the portion of said street occupied by the tracks of the defendant company, to be improved with a similar concrete pavement, constructed at the expense of the Borough of New Cumberland.

12. Prior to the filing of the present bill, the plaintiff notified the defendants of the projected improvement, and directed the defendants to join therein by constructing similar reinforced concrete pavement on the portion of the street occupied by its tracks. The defendant, professing its willingness to maintain the portion occupied by it with good oil-bound macadam pavement, refused to join in the construction of the reinforced concrete pavement, averring that it was under no legal obligation so to do.

13. Subsequent to this refusal on the part of the defendants, the plaintiff filed the present bill, averring, in substance, the facts above set out, and praying that the defendants, or either of them, as the court might determine, should be required to join in the work of the improving of Bridge Street by the building of a road of similar construction on that portion thereof covered by their tracks and facilities, in accordance with the plan adopted by the plaintiff and the Commonwealth of Pennsylvania.

14. At the time that the bill in equity was filed, Bridge Street within the borough limits was paved with an oil-bound macadam, the tracks of the defendant companies being located approximately in the middle of said street. The portion of the street occupied by the tracks of the company was, at the time of the filing of the bill, passable throughout its entire length, but a considerable portion of the part of the road so occupied by the defendants was in bad condition and in need of repairs; and this condition had existed for some time prior to the filing of the bill. The condition of that portion of Bridge Street occupied by the defendants at the time of the filing of the bill was substantially the same as that of the rest of the street.

15. The defendants filed an answer, denying that the portion of the street occupied by them was in bad condition; denied that they had been properly notified to join in the improving of Bridge Street; averred that, under the ordinances under which they were operating, they were legally bound to do nothing more than to maintain a macadam paving on that portion of the street occupied by them; and expressed their willingness and purpose to maintain that portion with a proper oil-bound macadam pavement. A replication was filed by the plaintiffs, and a hearing was had on bill, answer, replication and proofs.

16. The plans of the State Department of Highways in connection with the improvement of Route 250 called for the present improvement of something over 11,000 feet thereof, this including the portion of the route lying within the limits of the Borough of New Cumberland; and the specifications called for the construction of two parallel strips of reinforced concrete nine feet in width, having between them a strip of oil-bound macadam of a width varying

New Cumberland Borough *v.* Valley Railways, etc.

from eight feet in some portions outside the borough limits to ten feet in that portion running through the Borough of New Cumberland. This type of road construction, providing for two concrete lanes on either side of a lane of macadam, is a well- recognized, modern type of road construction, adopted by the State Department of Highways in other sections of the Commonwealth, and regarded by that department as suitable for the requirements of present-day travel. Such a type of construction is not unreasonably incongruous nor practically incompatible with the type of construction agreed upon by the plaintiff and the Department of Highways for the improvement of the remaining portion of Bridge Street lying within the Borough of New Cumberland.

17. The type of road construction asked by the plaintiff would cost the defendants from four to six times as much to construct as the type of construction, to wit, a proper oil-bound macadam strip, which the defendants themselves proposed to construct, the variation in the relative cost depending on whether the defendants used new or old rails in the reconstruction of their tracks, it being possible for them to use the old rails now in use in the oil-bound macadam pavement, while new rails would be necessary if they relaid their tracks with reinforced concrete, as desired by the plaintiff.

18. Under existing conditions of traffic and travel, it is not necessary, nor would it be reasonable at this time, to compel the defendants to abandon an oil-bound macadam pavement for that portion of the highway in question occupied by their tracks and compel them to substitute therefor a reinforced concrete pavement.

### Conclusions of law.

1. The defendants are bound to keep the portions of the street occupied by their right of way in good condition, even in the absence of any express contract or statutory direction to that effect.

2. The defendants are, under the common law, bound to repair that portion of Bridge Street occupied by their tracks and facilities, when out of repair, in a manner that reasonably corresponds with the street pavement adopted by the municipality, and in a manner that is not unreasonably incongruous nor practically incompatible with the style of paving adopted by said municipality.

3. Where the contract between the municipality and the street railway company calls for a particular kind of paving by the street railway company, it cannot be compelled to install a new kind at a time when the original paving is in good condition and not in need of repairs, nor can a change in the style of paving be required of the railway company even when repairs are necessary, unless the original style of paving is incongruous with the style of paving adopted by the municipality and practically incompatible therewith. The burden is upon the municipality to show that the change in the character of pavement is reasonable, necessary and proper.

4. Where the contract between the municipality and the street railway company calls for paving by the railway company which shall be the same as that adopted by the municipality, there the street railway company will be compelled to change its style of paving to conform with that adopted by the municipality.

5. The defendants in this case should be required to construct crossings for pedestrians at the street and alley intersections covered by the Ordinance of May, 1906, which crossings shall be of reinforced concrete similar to that used in the portions outside the section occupied by the tracks of the defendant companies, if such construction is desired by the plaintiff herein.

6. The parties to the present bill should each pay the costs of their own witnesses. All other costs should be paid by the defendant companies.

## Discussion.

The present bill was filed by the Borough of New Cumberland to compel the defendant companies to repair that portion of Bridge Street in said borough which is occupied by the tracks of the companies by paving the same with reinforced concrete, so that it may conform with the paving of the balance of the street which is to be constructed through the joint action of the borough and the State Department of Highways. The tracks of the defendants were laid on Bridge Street in pursuance of two consent ordinances of the Borough of New Cumberland, which created a contractual relationship between the parties. Under the terms of these ordinances, the Harrisburg and Mechanicsburg Electric Railway Company was required to macadamize the space between the rails laid down, and also the space outside the rails as far as the ties extended, which would give a total width to be taken care of by that company, its successors or assigns, of eight feet under the construction originally adopted and in use at the time of the filing of the bill. Under the terms of the ordinances, the defendant here was not required to do more than to pave with macadam; and this the defendant had done up to the time of the filing of the bill, and this it expresses its willingness to continue to do hereafter. The plaintiff, however, does not rely upon the contractual obligation of the defendant, but contends that, under the conditions shown by the evidence, there was a common law duty upon it to repair its tracks, and to repair them in a manner that would conform with the character of pavement which the borough, in conjunction with the State Department of Highways, had started to construct shortly prior to the filing of the present bill. The borough contends that at the time of the filing of the bill, and for a number of months prior thereto, the portion of Bridge Street occupied by the company's track was in bad condition and in need of repair; that the borough, with the State Department of Highways, had determined to pave with reinforced concrete all of Bridge Street, except that portion occupied by the tracks of the defendant companies; that the borough had notified the defendant companies of this intention, and had notified the companies to repair their tracks by paving the same with a pavement similar to that in contemplation by the borough, and that the repairs required to be made by a pavement of reinforced concrete were reasonable, necessary and proper under the conditions shown. All of these averments were denied by the defendant companies. A replication having been filed by the plaintiff, after answer by the defendants, the case came on to be heard on bill, answer, replication and proofs. The contention of the plaintiff was that it having shown that the defendants' portion of the street was in need of repairs, and that they had been notified by the borough to repair by paving with reinforced concrete, that this, in connection with the fact that the borough and the State would proceed to pave the balance of the street with a pavement of that character, made it obligatory upon the defendants to pave their portion of Bridge Street in conformity with their improvement. The contention of the defendants was that, even if the defendants' portion of the street was out of repair— which was denied—and even if they had been duly notified to repair with reinforced concrete paving—which was also denied—their liability for repairs was limited to repairing with a macadam pavement, irrespective of what other conditions might be shown.

We are unable to agree fully with the contention of either party. It must be admitted, we think, under the rulings of the Supreme Court, in Nether Providence Township v. Philadelphia Rapid Transit Co., 280 Pa. 74, and Swarthmore Borough v. Philadelphia Rapid Transit Co., 280 Pa. 79, that, if the consent ordinances under which the street railway tracks were located and constructed had called for a concrete pavement, or if those ordinances had provided that the company should always maintain a pavement similar to that constructed by the borough, or such character of pavement as the borough might demand, then it would have been the duty of the defendants, irrespective of the other conditions shown, to have constructed the character of pavement desired by the plaintiff. Such a condition was not shown here; and, therefore, the plaintiff, in its present demand, is compelled to rely upon the common law obligation of the defendant companies to keep that portion of the street occupied by their tracks in a reasonably passable condition, irrespective of any agreement made with the municipality.

In order, however, that the demand of the borough in this case can be sustained, it must appear, first, that repairs to the portion of the street occupied by the defendants' tracks are necessary; second, that the defendants were notified to repair that portion of the street by paving it with the character of pavement that the plaintiff now demands; and, third, that repairs of the character now demanded by the plaintiff are reasonable, necessary and proper, taking into consideration the condition of the rest of the street and the condition in which the borough and the State were about to place it: Reading v. Traction Co., 215 Pa. 250; Reading v. Traction Co., 202 Pa. 571.

We think that the preponderance of the testimony in this case, considering the testimony of the defendants as well as that adduced on behalf of the plaintiff, established the first of these conditions. While the evidence showed that the portion of Bridge Street occupied by the defendants was passable at all times, it also showed that considerable portions thereof were very decidedly in need of repair; that those portions were rough, full of holes, dusty and insufficiently drained; and that those conditions had existed for a number of months prior to the filing of the present bill. This condition was largely due, we think, under the evidence, to the fact that the defendants knew of the proposed improvement by the borough and the State Department of Highways; that they recognized the probability that considerable alterations to the portion of the street occupied by their tracks would become necessary; and that, in order to prepare for this, they reduced expenditures for repairs and maintenance to a minimum for some time prior to the filing of the bill.

We think that the weight of the evidence also established the second of the two points which are indicated as necessary. Taking the correspondence between the representatives of the borough and those of the defendant companies, together with the evidence of interviews between the plaintiff and the defendants, we feel no doubt that the companies were apprised of the intended improvements by the borough and the State Highway Department; that they were informed that the borough expected the companies to repair the portion of the street occupied by them in conformity with the contemplated improvement; that this, in connection with the final letters from the attorney for the borough, constituted, in the absence of any requirement for a particular form of notice, a sufficient demand upon the companies to repair their portion of the street by paving it with reinforced concrete.

We think, however, that the plaintiff has failed to establish the third requirement, to wit, that repair to the portion of Bridge Street occupied by the defendants, by paving the same with a reinforced concrete pavement, is

reasonable, necessary and proper, taking into consideration the condition of the rest of the street and the condition in which the borough and the State were about to place it. This, as we view it, is a question of fact to be determined by the circumstances and conditions shown in the testimony, and viewed in the light of the most recent determinations of the appellate court in regard thereto.

The plaintiff relied, in this connection, on the two cases of Reading v. Traction Co., 202 Pa. 571, and 215 Pa. 250. But an examination of those cases shows, we think, a clear distinction between the conditions there and those which were shown in the instant case. In those cases, as in the present one, it was shown that the portions of the street occupied by the traction company were in need of repair when the city improved the balance of the streets, and it was also shown that the city had notified the traction companies to repair by paving with the same character of paving that was adopted by the city; but in both of those cases the city went farther and, on the trial of the case, showed that the style of paving which was in use by the traction company at the time, and which it proposed to continue, was incongruous with the pavement about to be put down by the city, and was practically incompatible therewith, so that its continuance by the traction company would not keep that portion of the street in a reasonably passable condition. Evidence to this effect was lacking in the present case, the plaintiff resting satisfied with showing the first two elements and the character of the pavement that it was installing; and this we regard as insufficient. In the first of the Reading cases, the defendant company offered no evidence whatever to overcome that offered by the city to show that the original style of pavement was incongruous and practically incompatible with the kind adopted by the city. In the second case there was conflict of evidence in this regard. In both cases the court submitted to the jury, to be determined as a question of fact, whether or not the style of pavement required by the city was reasonable, necessary and proper, or whether the style of pavement originally adopted constituted a reasonable repair and such as would maintain that portion of the street in a reasonably passable condition. In both cases the determination of this was against the railway company. In the latter case, that reported in 215 Pa., the court below charged the jury as follows: ". . . it will be for you to determine whether it was a reasonable thing for the city to pave these streets with asphalt, *and would have been a reasonable thing to permit a repair of the spaces between the tracks by retaining the kind of pavement that was there before,* or whether it was reasonable, necessary and proper to substitute in the place of that a repair by asphalting."

This instruction was assigned as erroneous and was upheld as proper by the Supreme Court.

In the earlier case the court, in passing upon the motion for judgment n. o. v., said: "The principal question raised by this rule is this: Where a street railway company has with its tracks occupied streets of a city with its consent and on condition that it pave its right of way and keep the same in good repair, . . . can the city, upon adoption and upon notice to the company of the adoption of an improved pavement for the rest of the street, with which the original pavement of the right of way *is incongruous and practically incompatible,* require the company, the pavement upon its right of way being in fact out of repair, to replace the same with a pavement reasonably corresponding with the street pavement adopted?"

And in this case the opinion of the court below was adopted by the Supreme Court as a correct statement of the law.

In both of these cases it will be seen, therefore, that the court below as well as the appellate court recognized that a change of the sort demanded here by the borough would not be required if it appeared that the maintenance by the railway company of the original style of pavement would be reasonable and proper and that a change thereof was not necessary.

In the instant case, the evidence on the part of the defendants was that their portion of the street had been paved with an oil-bound macadam; that they proposed to continue this type of pavement on the portion of the street occupied by them, Mr. Van Duzen, of the State Department of Highways, testifying that such a construction lying between strips of concrete pavement was a well-recognized form of road building; that it was adopted elsewhere by the State Department of Highways; and that, in the opinion of that witness, it would be sufficient to carry the traffic that now uses Bridge Street and that may be expected to use it hereafter. It also appeared that this identical style of pavement was to be constructed and used by the State Department of Highways in the other portions of its pending improvement of this identical highway route; and, in view of this testimony, which was not controverted, we do not see how we could find that a different and very much more expensive form of paving could be held to be necessary. If it is not, then, under the rulings in the cases upon which the plaintiff relies, the determination as to this part of the case must be in favor of the defendants.

While it did not so appear in the testimony in this case, the court has personal knowledge of a style of paving similar to that desired by the defendants here, which has existed for a number of years in the Borough of Carlisle. Three blocks of West High Street, upon which the tracks of the Cumberland Valley Railroad are placed, have been paved by the Borough of Carlisle with brick; the central portion, occupied by the tracks, has, during the same period, been paved by the railroad company with macadam; and, while it may be admitted that travel over the macadam portion is not quite as satisfactory as over the portion paved with brick, it has at all times been reasonably passable, and has had to bear the burden of heavy and constantly-increasing traffic, with, so far as the court is advised, no evil results to any traffic from the use of the macadamized portion of the street. While, as we have said, there is no testimony to this effect in the case, yet the court's knowledge of it makes it entirely easy for him to accept the opinion of Mr. Van Duzen as to the feasible and satisfactory results to be expected from paving of the sort contemplated by the defendants.

On the other hand, we do not think that it necessarily follows that the maintenance of an original paving would, under all circumstances, be reasonable and proper, and that a street railway company could be relieved from the necessity of installing an improved and more expensive character of pavement. This was required in Reading, as appears from the two cases cited above, although the ordinance under which the trolley company had been constructed called for a particular form of pavement; and we do not understand that the decision in those cases has been overruled or doubted. The defendants, in their contention in regard to this part, relied upon what was said in the case of Swarthmore Borough v. Philadelphia Rapid Transit Co., 280 Pa. 79 (83), where the court said: "Under the common law rule, the railway company was bound only to keep in reasonable repair the portion of the highway occupied, and this was required irrespective of any agreement made with the municipality. . . . But the duty was complied with if the method of paving existing at the time it was built was followed: Philadelphia v. Hestonville R. R. Co., 177 Pa. 371; Williamsport v. Williamsport Ry. Co.,

206 Pa. 65. If the municipality determined upon a repaving of a different character, the railway was not required to pursue the new plans adopted and improve the portion of the street occupied by it in a more expensive way."

Standing alone, this portion of the opinion would appear to sustain the contention of the defendants; but we think it must be construed in relation to the facts that were brought out there, and in the light of what was said in the balance of that opinion and of the one immediately preceding it, which involved the same obligation of the same railway company. In those cases the railway company had contracted, when it accepted the original ordinance providing for its construction, to maintain the entire street occupied by its tracks with macadam pavement. It allowed the street to become badly in need of repairs; it had refused to repair the same when repairs were demanded by the municipality, and the municipality had then repaired with macadam pavement, that being the style of pavement originally constructed and the style called for by the ordinance creating the contract between the parties. There was no attempt to demand from the railway company more than it had originally agreed to perform, nor, under the common law right, was there a demand to compel it to install a pavement of a character different from that originally constructed. In the Nether Providence Township case, too, the Supreme Court said: "The extent of the liability of the company to make repairs, when it has constructed its line upon a highway, depends on the circumstances. Its duty is always to keep in passable condition the portion of the street which may be used by it."

Taking this rule into consideration, in connection with what was said elsewhere, and viewing it in the light of the determination in the earlier cases, which certainly were not expressly overruled, we think it would be fair to hold that, where the original pavement was of a sort that was unreasonably incongruous with that later adopted by the municipality, and was practically incompatible with the new style of pavement adopted, so that a change from the original style could be held to be reasonable, necessary and proper, it would also be entirely reasonable to hold that the maintenance of the original style of pavement would no longer maintain that portion of the street in a reasonably passable condition for the purposes of modern transportation, and that, therefore, the construction of an improved pavement would be required. Such a construction would bring the later decisions into entire harmony with the earlier ones. Of course, if the court is in error about this, and the later ruling is inconsistent with the earlier ones, the court would feel bound to follow the later determination; and this would require the same conclusion that the court has reached, even though its reasoning in regard to that was erroneous.

As to one element, however, the contention of the defendants cannot, we think, be sustained. The second consent ordinance provided that "at the points where the crossings of the streets or alleys of the said borough are constructed over any streets, the said company shall make said crossings, in as far as they lie between the rails of its tracks and end of ties, of the same material as are used by the borough in the construction of the remainder of the crossings." Under the decisions of the Supreme Court in Chambersburg v. Electric Ry. Co., 258 Pa. 57; Nether Providence Township v. Philadelphia Rapid Transit Co., 280 Pa. 74, and Swarthmore Borough v. Philadelphia Rapid Transit Co., 280 Pa. 79, we think it became the duty of the defendant companies to make the pavement at the crossings of the streets and alleys, to an extent corresponding to the width of the sidewalks at those points, of the same character as the pavement adopted by the borough. Beyond this, how-

ever, we do not think the defendants can be required to go at this time. It is, of course, and will continue to be, the duty of the defendants to maintain the portion of Bridge Street occupied by their tracks in a reasonably passable condition at all times, and to maintain the macadam pavement constructed by them in good repair. If they fail to do this, the present plaintiff has an adequate legal remedy at any time that a default occurs.

### Decree.

And now, March 2, 1926, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

That the defendant companies shall repair, with a good oil-bound macadam pavement, the portion of Bridge Street, in the Borough of New Cumberland, occupied by the tracks of said companies, and shall maintain the same in good repair throughout; and where the said tracks are crossed by the streets and alleys of the Borough of New Cumberland, the said companies shall, unless relieved therefrom by the Borough of New Cumberland, construct crossings for pedestrians of the same material and quality of construction as that used by the borough in the construction of the remainder of the crossings.

Each of the parties hereto shall pay the costs of their own witnesses. The remaining costs shall be paid by the defendants.

From Francis B. Sellers, Carlisle, Pa.