## Geiger v. Pennsylvania Railroad Company

*D. G. Murphy*, for plaintiff.

*Barnes, Biddle & Myers*, for defendant.

LAMBERTON, J., August 19, 1937.—Plaintiff brought suit against defendant to recover damages for injuries received in an automobile accident in the early morning hours of October 31, 1936. At the trial the jury rendered a verdict in favor of plaintiff in the sum of $25,000. Defendant has filed motions for judgment n. o. v. and for a new trial.

The verdict of the jury has established the following facts:

Defendant maintains railroad tracks and switches in the bed of Delaware Avenue, a public highway in the City of Philadelphia. At the time in question, plaintiff was a passenger in an automobile being driven southwardly on Delaware Avenue, in the vicinity of Moore Street. The driver of the automobile, in order to pass a large truck likewise proceeding southwardly on Delaware Avenue, turned to the left onto the tracks of defendant. At that point there is a switch for the transfer of railroad cars from one track to another, and in the angle formed by the switch, commonly called the "frog", was a depression in the street paving, 31 inches long, 6 inches deep and 7½ inches wide, which depression had existed for several months. The front wheel of the automobile went into this depression, causing the automobile to turn sharply to the right. The driver lost control, and the automobile crashed into a pillar 66 feet south of the depression, causing the injuries complained of. The depression created a dangerous situation.

The shaded area on the drawing below depicts the depression in accordance with the testimony and the photographs offered in evidence.

The theory of plaintiff was that defendant was negli-

gent in failing to maintain the paving between its east rail and the switch rail in a reasonably safe condition for public travel, and it was on this basis that the case was submitted to the jury by the trial judge. In support of its motion for judgment n. o. v., defendant contends that there was no such duty upon defendant, and, consequently, that the existence of the hole was not evidence of negligence on the part of defendant. Admittedly such duty was not imposed upon defendant by charter, franchise, statute or contract, so the matter must be determined under the common law.

There are many decisions of our appellate courts which hold that it is the duty of a railway company occupying a portion of a public highway to keep in proper repair that part of the highway occupied by its tracks: Culver et al. v. Lehigh Valley Transit Co. et al., 322 Pa. 503; Brobston v. Darby Borough, 290 Pa. 331; Reading v. United Traction Co., 215 Pa. 250; Reading v. United Traction Co., 202 Pa. 571.

Counsel for defendant argues that in each of these cases there was involved a charter, franchise, statute or contract imposing such duty. Perhaps so, but our Supreme Court has made it very clear that its decision was not dependent upon such charter, franchise, statute or contract. In the case of Brobston v. Darby Borough, supra, the Supreme Court said, at page 336:

"Even in the absence of a contract, a street railway company is under the implied duty to keep in proper re-

pair the portions of a highway occupied by its tracks: Reading v. United Traction Co., 215 Pa. 250; Chambersburg v. Ry. Co., 258 Pa. 57; Swarthmore Boro. v. P. R. T. Co., 280 Pa. 79. Since the Constitution of 1874, which requires municipal consent before entry upon the streets, such obligation is usually imposed in terms by franchises granted, and the duty to maintain the roadway is ordinarily made by agreement an express condition of the right to locate. But the obligation so assumed is a mere substitute for the common law duty imposed when possession is taken of a public road".

In Culver et al. v. Lehigh Valley Transit Co. et al., supra, the court said:

" 'It is recognized, with substantial unanimity, that a railway company, whether general or passenger, is bound to keep the portions of streets occupied by its right-of-way in good condition, even in the absence of any express contract or statutory direction to that effect' ".

In Reading v. United Traction Co., 202 Pa. 571, the court said:

". . . a railway company, whether general or passenger, is bound to keep the portions of streets occupied by its right of way in good condition, even in the absence of any express contract or statutory direction to that effect".

Perhaps the clearest expression of all is contained in the case of Reading v. United Traction Co., 215 Pa. 250, where the court said:

"Before the adoption of our present constitution street railway companies were authorized to occupy streets without municipal consent; now they can be authorized to do so only with such consent; but, no matter how authorized, the authority under which streets are occupied, unless expressly relieving such companies from the duty of keeping in repair those portions of the streets occupied by their tracks, carries with it a liability on their part to do so."

Counsel for defendant also argues that these quotations are mere dicta, but, even so, we prefer to follow

the dicta of the Supreme Court until that court tells us that it did not mean what it said.

Counsel for defendant also argues that the cases above cited are not controlling upon us, because they involve street railway companies, deriving their right to occupy the streets from the consent of the municipality, whereas defendant derives its right to occupy Delaware Avenue from the State. The generality of the language quoted above would apply to the one as well as to the other, and the reasoning involved would militate against rather than in favor of the distinction which defendant seeks to invoke. For example, in Reading v. United Traction Co., 215 Pa. 250, the court said, at page 255:

"It is because the municipality, as the agent of the state, has charge of the streets, that it must maintain and keep them in proper repair, and when the state permits this charge, as to a portion of a street, to be committed to another, it must be understood as imposing upon such party the responsibility that formerly rested upon the municipality, unless in the grant, or in the municipal consent thereto, of the right to use a portion of the street, such responsibility is expressly withheld and its imposition continued upon the municipality."

This language exactly fits the instant case.

For the foregoing reasons, we conclude that defendant is not entitled to judgment n. o. v.

At the trial counsel for defendant attempted to introduce in evidence moving pictures of an automobile of similar make and type to that occupied by plaintiff being driven into the depression in the way it was testified the car occupied by plaintiff was driven on the night of the accident. This was in order to show that the result could not have been as testified to by plaintiff's witnesses, and to support the contention of defendant that the automobile occupied by plaintiff never went into the hole at all. Counsel for plaintiff objected to the introduction of these moving pictures, and the objection was sustained by the trial

judge. Counsel for defendant contends that this was error.

Defendant's theory is somewhat along the line of incontrovertible physical facts. Defendant contends that the moving pictures would show that the accident could not have happened as plaintiff's witnesses testified. The doctrine of incontrovertible physical facts cannot, as a general rule, be applied to moving objects, but, aside from this, the actions of an automobile going into a hole are dependent upon so many factors that there can be no assurance that two automobiles going into the same hole will act in the same way, no matter how great care may be taken to duplicate exactly the two performances. To mention a few factors, the action of the automobile is dependent upon the angle at which it enters the hole, the pressure in the tires, its speed, perhaps on the play in the steering wheel, perhaps on whether the steering wheel is tightly or loosely held by the driver, and certainly upon the physical and mental reactions of the driver immediately thereafter. We therefore do not believe that such evidence would have been helpful to the jury. To view the matter in the light most favorable to defendant, the admission or rejection of the moving pictures was a matter within the sound discretion of the trial judge. It might have been error to admit them. It surely was not error to exclude them.

Counsel for defendant also complains of the following language contained in the charge of the court, to which exception was duly taken:

"There is no doubt that there was a good, healthy collision between the automobile and the pole. Could that have been caused by an automobile going only 30 miles an hour? If you think that the automobile must have been going faster, how did it come to go faster? That is for you to decide. When he lost control of his car, did he lose control of his foot and perhaps step on the gas instead of stepping on the brake? That sometimes happens. There is no evi-

dence of it here, but it is things like that you must consider, if you find that speed is important at all."

Counsel cites cases holding that it is error to submit a fact to a jury where there is no evidence to support a finding of such fact. With this, of course, we agree. The jury in finding facts, however, is not limited to express testimony. The jury may draw reasonable inferences from the testimony submitted. To put two extreme illustrations, if a man is accused of murder, the jury could not find defendant guilty from the mere fact that deceased was shot, but, on the other hand, the jury could find defendant guilty if, in addition to the evidence that deceased was shot, there is evidence that defendant was seen immediately after the shooting in the vicinity where the shooting occurred with a revolver in his hand. There would be no express evidence that defendant shot deceased, but there would be evidence from which the jury would be permitted to draw that inference.

In the instant case, there is evidence from which the jury might find that the automobile was going 30 miles an hour when it ran into the hole. The jury might likewise find that the automobile was going at a greater speed when it crashed into the pole. We all know that an automobile on a level street will not pick up speed without cause. The only conceivable cause of an increase in speed between the time the automobile went into the hole and the time when it hit the pole was that the driver stepped on the accelerator. In view of the testimony that the car was completely out of control, common experience would indicate that this might have accidentally happened. It was an inference which the jury might properly draw from the testimony. The trial judge did not tell the jury that it should draw this inference. He made it amply plain in other parts of his charge that all questions of fact were for them alone. He merely indicated that they could draw such inference if they saw fit. In this there was no error.

These being the only two points argued by counsel for

defendant in support of the motion for a new trial, the motion must be overruled.

And now, to wit, August 19, 1937, defendant's motions for judgment n. o. v. and for a new trial are both overruled.