# Pennsylvania Railroad Co., Appellant, *v.* Public Service Commission.

*Railroads—Station facilities—Overhead and underground crossings—Public Service Commission.*

Where a railroad company abolishes grade crossings for passengers between the platforms of two stations, and it appears that both stations are located in cuts where public roads are carried over the tracks by bridges, and that staircases are maintained from all of the platforms up to the bridges, an order of the Public Service Commission will not be sustained by the appellate court, where it appears that the order involves a complete reconstruction, relocation and rebuilding of stairways and approaches which had been in use for many years, and the construction of a tunnel under the tracks of one of the stations, and it also appears that the petitioners against the company only asked for a resumption of the grade crossings, and did not deny an averment by the company that the business at the two stations was done at a distinct loss to the company.

In such a case where it also appears that the order of the commission as to the construction of the tunnel was based upon an engineer's report, that had not been submitted to the railroad company, and was not known to it until after the case had been argued before the commission, the case will be remanded to the commission with directions to reconsider the matter and make such order as shall be reasonable and in conformity with law.

Argued Oct. 29, 1917. Appeal, No. 188, Oct. T., 1917, by plaintiff, from order of Public Service Commission of the Commonwealth of Pennsylvania, Docket No. 627 and 881, 1916, in case of Pennsylvania Railroad Company v. Public Service Commission of the Commonwealth of Pennsylvania. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Petitions of Paul H. Barnes and the Neighborhood Club protesting against the closing of gates in the fence between the tracks at Bala station and Cynwyd station of the Pennsylvania Railroad Company. The material averments of the petitions and answers and a summary

of the evidence are set forth in the opinion of the Superior Court.

*Error assigned* was the order of the Public Service Commission.

*George Stuart Patterson,* with him *S. B. Lloyd,* for appellant.—There is a marked distinction between facilities which are "reasonable, adequate and practically sufficient," and the facilities required by the act, namely, "reasonably adequate, and practically sufficient." "Reasonably adequate" is moderately adequate, and facilities which permit patrons to reach the bridge either by driveways or steps, which steps and driveways were laid out and constructed with due regard to the surroundings, are fairly or moderately adequate, or, in other words, equal to what is required: Chicago, Burlington, Etc., R. R. Co. v. Railroad Commission of Wisconsin, 237 U. S. 220; Atlantic Coast Line R. Co. v. Wharton, 207 U. S. 328.

In addition to the failure of the commission to confine itself to the authority given it by the act, here was an utter failure on the part of the complainants to furnish the commission with evidence which would support the order: Baltimore & Ohio R. R. Co. v. Public Service Commission, 66 Pa. Superior Ct. 403; Washington ex rel. Oregon R. R. & Navigation Co. v. Fairchild, 224 U. S. 510; Great Northern Ry. v. Minnesota, 238 U. S. 345.

The order of the commission is a taking of property without due process of law: Great Northern Ry. Co. v. Minnesota, 238 U. S. 345; Mississippi R. R. Com. v. Illinois Cent. R. R., 203 U. S. 335; C., C. & St. L. Ry. Co. v. Illinois, 177 U. S. 514.

*George C. Muhly,* for intervenor.—In cases of regulation and limitation of public service companies, the courts will review the reasonableness of the order or regulation, having in mind the comfort and convenience

of the public, the common good as involved in the general property or the general public welfare, and in so determining will inquire whether property has been taken without due process of law or contract rights have been violated unreasonably. The power to regulate is not the power to destroy, and limitation is not the equivalent of confiscation, and the question of reasonableness will be considered both as regards the company and regards the public: Relief Electric Light, Heat & Power Co.'s Petition, 63 Pa. Superior Ct. 1; Jenkins Township v. Pub. Service Com., 65 Pa. Superior Ct. 122; Wilcox v. Gas Company, 212 U. S. 19.

The order does not carry with it an annual or a continued outlay nor is the order arbitrary or capriciously made. The public necessity is distinctly shown and the facts of the case bring it squarely within the ever present police power of the State: Penna. R. R. Co. v. Ewing, 241 Pa. 581; Northeastern Pac. R. R. Co. v. Duluth, 208 U. S. 581; Knoxville Water Co. v. Knoxville, 189 U. S. 434; Hudson County Water Co. v. McCarter, 209 U. S. 349; New Orleans Gas Light Co. v. Drainage Co., 197 U. S. 453.

OPINION BY ORLADY, P. J., April 22, 1918:

Cynwyd and Bala are suburban settlements about a half mile apart, in Lower Merion Township, Montgomery County, along the line of the Schuylkill Division of the Pennsylvania Railroad, which operates a double track railroad through them and maintains at each place a station and ticket office. At Bala the railroad tracks are laid in a cut, over which, City avenue, the boundary line between Philadelphia and Bala, is carried by an overhead bridge. On both sides of the railroad there are uncovered stairways leading from the station level to the bridge above. These are constructed so as to have twenty-five steps in each set of stairs, with treads of twelve inches, and risers of eight and one-fourth inches. The local post-office is in the ticket office of the railroad com-

pany, which is approached by a driveway and sidewalks
from public streets and ways.    Prior to March 1, 1916,
it had been the practice of the railroad company to per-
mit passengers to cross the tracks at grade at the station,
by opening gates in a fence between the tracks and par-
allel with them.    On that date, for the safety of its pa-
trons, this practice was discontinued, and passengers
were required to go from one side of the tracks to the
other, by way of the stairs and the overhead bridge,
which action by the railroad company was approved by
the commission in a finding, as follows: "It is apparent
that very much danger does attend such a practice.    We
consider that the railroad company has exercised good
judgment for the safety of its patrons in keeping these
gates closed."

At Cynwyd, the station and post office are on the same
level as the railroad tracks, which are in a deep cut, and
Montgomery avenue crosses the railroad by an overhead
bridge.    To reach this station there is a similar arrange-
ment of steps, and since March, 1916, the railroad com-
pany has refused to allow its patrons to open the gates
in a like fence as at Bala, so as to cross the tracks at
grade.    In addition to the railroad facilities, residents
in these localities have access to the city by trolley line
service.

To the date last given, the facilities furnished by the
railroad company were deemed adequate and practically
sufficient for the accommodation and safety of its pa-
trons, and the principal complaint urged before the com-
mission was the refusal of the railroad company to per-
mit its patrons from crossing the tracks at these stations
at grade.

A number of witnesses were heard, and after full hear-
ing, the commission made an order that each of these
stairs, the facilities then in use, should be changed; at
Bala, by rebuilding a new set of stairs on each side of
the station leading up directly from the station platform
and provide an opening near the pilaster on each side of

the bridge, and that the stairs be constructed with one or two right-angle turns, and one or two platforms in their entire length; the treads to be not less than twelve inches wide, the risers to not exceed seven inches and the width not less than five feet; that the stairs be of steel construction, with anti-slip safety treads, a roof construction over the stairs, and the station canopy extended to the proposed stairs.

At Cynwyd station, the railroad is ordered to construct a subway not less than six feet wide, and seven feet high, with an inclined walk on the west side of the station, leading from the passenger station under Montgomery avenue bridge, and along or near the south approach of the same bridge up to Bala avenue, and to relocate and rebuild the present stairs on the east side of the station to a location at or near the north end of the waiting room, or opposite the proposed subway opening; the stairs to be constructed with risers not to exceed seven inches, treads twelve inches, width not less than five feet, and near platform or landing, between the station platform level and upper ground level, and erect a roof over the same.

The report of the commission shows that the gross receipts of the station at Bala for the year 1915, were $9,575.33; twenty-one trains stopped there each way except Sunday, when fourteen trains stopped in each direction, with an average of on and off passengers of 140. At Cynwyd, the gross receipts for 1915, were $25,604.31, with the same number of trains as at Bala, and slightly under 400 on and off daily passengers. The conclusion reached by the commission was that the railroad company "should afford some other facilities for the accommodation of passengers; the stations at both places can be improved and rendered more convenient," and with due regard to the needs and traffic of the two stations the order as above suggested was made.

Our authority to review the finding of the commission, is defined in Sections 22 and 23, of the Public Service

Act, as follows: "Whether or not the order appealed from is reasonable and in conformity with the law"; 2d. "The orders of the commission shall be prima facie evidence of the reasonableness thereof, and the burden of proving it contrary shall be upon the appellant." The duty of the railroad company is defined in Article II, Section 1, of the Public Service Company Law, of July 26, 1913, as follows: "To furnish and maintain such service, including facilities, as shall in all respects be just, reasonably adequate, and practically sufficient for the accommodation and safety of its patrons, employees and the public, and in conformity with such reasonable regulations or orders as may be made by the commission."

From the viewpoint of the complainants, the facilities in use in 1916 and prior thereto, were deemed just, reasonably adequate, and practically sufficient for the accommodation and safety of the patrons and employees of the company, with the permissive use of the tracks at grade as a passageway from one side of the railroad to the other,—and the action of the railroad company, in refusing to permit its patrons permission to cross the tracks at grade, is conceded to be the principal reason for the demand for what are called added, extra or supplementary facilities at these two stations. From the finding of the commission it is apparent these facilities involve a complete reconstruction, relocation and rebuilding of stairways and approaches that have been in use for many years, and, a new and added facility in the shape of a tunnel or subway under the tracks at Cynwyd station.

The power of the commission is limited by the statutory declaration to require the maintenance of facilities "As shall in all respects be just, reasonably adequate, and practically sufficient for the accommodation and safety of its patrons." In the event of everything being done as suggested by the commission, there would necessarily be some persons who, by reason of physical infir-

mities or illness, would yet feel that they were totally inadequate and insufficient for their personal accommodation and safety. The question must be considered with regard to the character and volume of traffic, the location of the tracks and approaches, the relative cost of the necessary facilities, and other phases of the question affected by the facts of the particular case. To warrant such a radical change, the local conditions must justify the extra facilities asked for; the public needs of the locality must be considered and provided for. Apt illustrations are given in C., B. & Q. R. R. Co. v. R. R. Com. of Wisconsin, 237 U. S. 220; Atlantic Coast Line v. Wharton, 207 U. S. 328. It appears, that facilities were directed by the commission that were not asked for by the complainants, and in regard to which there was definite protest by the railroad company, on account of the necessary cost incident thereto. While the approximate gross earnings of the railroad company at these two points was stated, the cost of the construction required is very indefinite, and the basis of determining it was not presented in such proof, that the railroad company had an opportunity to answer. This becomes the more important from the fact that it was directly averred, and it is not challenged as a fact, that the business at these stations was done at a distinct loss even with the present facilities, and to impose additional cost for added facilities, would not be in any fair relation to the duty owed by the railroad company. The question in each case must be determined in the light of all the facts, and with a just regard to the advantages to be derived by the public, and the expenses to be incurred by the carrier. For while the expense must always be considered, the weight to be given to that fact depends somewhat, on the character of the facility sought. Where, however, the proceeding is brought to compel a carrier to furnish special facilities which are not included within its absolute duties, the question of its expense is of more controlling importance. In determining the reasonableness of such

an order the court must consider all the facts, the places and persons interested, the volume of business to be affected, the saving in time and expense, as against cost and loss to the carrier: Washington ex rel. O. R. & N. Co. v. Fairchild, 224 U. S. 510; Chicago, Etc., R. R. Co. v. Tomkins, 176 U. S. 167; L. & N. R. R. Co. v. Burr, 63 Fla. 491, s. c. 44 Lawyers' Reports Annotated, N. S. 189.

The construction of a tunnel at Cynwyd, and the reconstruction and rearrangement of the steps at both places, must be considered special or additional facilities, and as stated the necessity for which was only urged by the complainants as a substitute for the privilege of crossing the tracks at grade, which the commission rightly decided was improper and highly dangerous for the patrons of the road.  Further, to carry into effect the order of the commission, would require the railroad company to purchase additional land on which to construct the suggested approaches, and the cost of this was not given by any witness.  The construction of a tunnel at Cynwyd representing eighteen down steps on one side, and twenty-two up steps on the other, so as to leave and approach the track level, would suggest the same objections as an open-air stairway, and the cost of this was not ascertained by any definite testimony.  It appears by the record, that proof was received by the commission in the form of engineer's reports that were not submitted to the railroad company, though they may have been very informing and material in determining the conclusion reached.  This testimony, like all other substantive proof, should have been open to the inspection and reply by the railroad company.  The right to a full hearing and scrutiny of estimates and reports, is required by all of the cases to which our attention has been called, "In no other way can the commission test the sufficiency of the facts to support the finding, for otherwise, even though it appeared that the order was without evidence, the manifest deficiency could always be explained on the theory that the commission had before it extraneous, un-

known but presumptively sufficient information to support the finding": U. S. v. B. & O. Southwestern R. R. Co., 226 U. S. 14; Int. C. Com. v. Louisville & N. Ry. Co., 227 U. S. 88. The weight given to the engineer's report cannot be ascertained by the record, but it appears to be undisputed, that the appellant neither saw or knew of the report until after the briefs were filed and the case argued before the commission. As said in Washington ex rel. v. Fairchild, 224 U. S. 501, it would be a very strong proposition to say that the parties were bound in the higher courts by a finding based on specific investigations made in the case without notice to them. Such an investigation is quite different from a view by a jury taken with notice and subject to the order of a court, and different again from the question of the rights of the commission to take notice of results reached by it in other cases, when its doing so is made to appear in the record, and the facts thus noticed are specified so that matters of law are saved": U. S. v. B. & O. S. Ry., 226 U. S. 20. It does not affirmatively appear that the engineer heard the testimony adduced before the committee, or that he made an investigation of his own, or that he recommended a tunnel at Cynwyd. In so disposing of the controlling facts, the commission exceeded the authority which our statute vests in it.

A review of the authorities are given in Jenkins Twp. v. Public Service Commission, 65 Pa. Superior Ct. 122, and Relief Electric Light, Heat & Power Company's Petition, 63 Pa. Superior Ct. 1; Wilcox v. Consolidated Gas Co., 212 U. S. 19, in which latter case it is said, "They cannot capriciously exercise the functions lodged in them. The act is not intended to confiscate or destroy property, or to be a menace to the conduct of the affairs of utility companies by an undue exercise of the powers conferred by it. The duties of the commission are solely administrative in character and as such must be considered, and its acts should be unhampered by any other consideration, save the proposition, that whatever

is done is for the common welfare of the people of the State, as controlled by the constitutional mandate that property should not be taken without due process of the law, and the principle as to reasonable profit to the company as enunciated in Wilcox v. Consolidated Gas Company, 212 U. S. 19.   See also U. S. v. P. R. R., 242 U. S. 208; Great Northern R. R. Co. v. Minnesota, 238 U. S. 340.

The controlling questions in this case are not clearly covered in Ben Avon Borough et al. v. Ohio Valley Water Company, 260 Pa. 289, in which the Supreme Court reversed this court and sustained the conclusions reached by the Public Service Commission.

The report of the commission must justify itself in reasons upon review in an appellate court, and a majority of this court is of the opinion that the report of the commission in this case and the record accompanying it is lacking in several particulars as above stated, in showing that the order appealed from is reasonable under the circumstances, but that it demonstrates that the order made is "unreasonable and based upon incompetent evidence materially affecting the determination and order of the commission."

For the reasons stated, the record is remanded to the commission, with direction to reconsider the matter and make such order as shall be reasonable and in conformity with law.