# Norristown *v.* Reading Transit & Light Co. et al., Appellants.

*Street railways—Paving of streets—Municipal consent—Borough —Contract — Decrease of traffic—Jurisdiction—Equity—Specific performance—Public Service Commission—Surrender of franchise —Acts of April 9, 1856, P. L. 293, and June 7, 1907, P. L. 440.*

1. Equity has jurisdiction to enforce specific performance of a contract by a street railway company to pave a street of a borough which it occupies by reason of the consent of the borough.

2. In such case, the question of jurisdiction of equity because of an adequate remedy at law cannot be raised in the appellate court, where it has not been raised in the lower court, in limine, as provided by the Act of June 7, 1907, P. L. 440.

3. The street railway company is not relieved from the duty of paving by reason of its receipts being greatly reduced because the borough gave a competitor the privilege of constructing a line on a parallel street, where the franchise granted to the company was not exclusive.

4. The Public Service Commission has no jurisdiction to pass upon the reasonableness of a contract between a borough and a street railway company relating to the paving of streets.

5. On a bill by a borough against a street railway company to enforce the specific performance of a contract to pave streets, a mere offer to surrender its rights in the street and remove its tracks, because further operation had become unprofitable is insufficient.

6. If a street railway company desires to surrender all of its powers and franchises it must proceed under the Act of April 9, 1856, P. L. 293.

7. If it desires to reduce its field of activity, by abandoning certain territory which it would otherwise be compelled to serve, it must apply, for permission to do so, to the Public Service Commission.

*Appeals—Questions for lower court—Waiver.*

8. On an appeal by a street railway company from a decree directing it to repave a street, complaint cannot be made that the decree was indefinite as to the description of the material to be used. Such complaint should have been made to the court below.

9. A defense not set up in the answer filed cannot be urged on appeal.

Argued February 21, 1923. Appeals, Nos. 97 and 98, Jan. T., 1923, by defendants, from decree of C. P. Montgomery Co., April T., 1921, No. 7, on bill in equity, in case of Burgess and Town Council of Borough of Norristown v. Reading Transit and Light Company and Norristown Passenger Railway Company. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART; SADLER and SCHAFFER, JJ. Affirmed.

Bill in equity for specific performance of contract to pave street. Before MILLER, J.

The opinion of the Supreme Court states the facts.

Decree for plaintiff. Defendants appealed.

*Error assigned,* inter alia, was decree, quoting it.

*Berne H. Evans,* with him *Franklin L. Wright,* for appellants.—The borough is not entitled to a decree of specific performance where it has made the franchise useless by authorizing the diversion of the traffic of the connecting line against the protest of respondent which traffic, alone, made the line remunerative: Willard v. Talor, 8 Wall. 557; Freetly v. Barnhart, 51 Pa. 279.

The Public Service Commission has jurisdiction over the subject matter of this bill: Citizens Pass. Ry. Co. v. P. S. C., 271 Pa. 39.

The decree is erroneous because it is not definite, nor is it in accord with the terms of the condition.

The paving condition is a condition subsequent and on its violation the remedy is by forfeiture of the grant and not by specific performance of the condition.

The borough has an adequate remedy at law: Allegheny City v. Ry., 159 Pa. 411; Collingdale Boro. v. Transit Co., 274 Pa. 124.

*Henry M. Brownback,* with him *Russell J. Brownback,* for appellees.—The borough can compel in equity, the specific performance of the covenants in its ordinance

to repair and repave: Allegheny City v. Ry., 159 Pa. 411; Collingdale Boro. v. Transit Co., 274 Pa. 124; Sayre Boro. v. Trac. Co., 270 Pa. 412; Patton Twp. v. Ry., 226 Pa. 372; Chambersburg Boro. v. Ry., 258 Pa. 57; Zook v. R. R., 206 Pa. 603; Thompson's App., 126 Pa. 367; Pa. Sch. V. R. R. v. R. R., 160 Pa. 277; Luther v. Luther, 216 Pa. 1.

The Public Service Commission has no jurisdiction over the matter of the bill: Citizens Pass. Ry. v. P. S. C., 271 Pa. 39.

The conditions imposed were a prerequisite of entry on the streets and must be complied with, no matter how onerous: West Chester Boro. v. Cable Co., 227 Pa. 384; Allegheny City v. Ry., 159 Pa. 411; Spring City Boro. v. Ry., 35 Pa. Superior Ct. 538.

OPINION BY MR. JUSTICE SADLER, May 14, 1923:

The Borough of Norristown, in 1884, by ordinance gave a passenger railway permission to occupy certain of its highways, upon condition that the latter should repair and renew, when necessary, the streets on which the line was proposed to be built, and the grant was duly accepted and the tracks laid. Some years thereafter, the motive power in use was changed to electricity, and, in the franchise so providing, a like stipulation appeared. A lease to a traction company followed, by which the contract liabilities of the original grantee were assumed, and, in 1913, the rights of the second corporation were transferred to the Reading Transit Co., one of the defendants.

In 1902, the construction of a branch on De Kalb Street was authorized on the same conditions, the purpose being to connect with a line of another railway operating from an adjoining town. As an additional consideration, a new pavement was then laid at the cost of defendant's predecessor. Later, the highway fell into disrepair, and frequent demands were made on the company to proceed with the work of rebuilding. Failing to comply, the present bill was filed to compel performance.

The answer denied liability, averring the request was unreasonable, imposing an undue financial burden, in view of the decreased traffic, and offered formally to surrender its franchise on the street involved. It also asserted the contract to renew, as set forth in the granting-ordinance, could not be enforced, since no preliminary order to this effect had been obtained from the Public Service Commission. A decree was entered in favor of the plaintiff, and defendants have appealed.

Jurisdiction of the court is assailed on the ground that the remedy at law is adequate, and, therefore, exclusive. It is true, the work contemplated might have been done by the borough, and the cost thereof collected from defendant (Collingdale Borough v. P. R. T., 274 Pa. 124), or it might have forfeited the right to occupy the street (Keystone S. T. & T. Co. v. Ridley Park, 28 Pa. Superior Ct., 635, 641), but plaintiff was not limited to such redress, and relief may be had by a proceeding to compel the company to specifically perform the obligation which it assumed when the franchise was accepted: Sayre Borough v. W. S. & A. Trac. Co., 270 Pa. 412. Without municipal consent, no railway could have been built, and the agreement to repair was one of the conditions precedent to the coming into effect of the grant. "When, as here, in consideration of the franchise, it has agreed to make the necessary improvements, the terms of the contract must be complied with, until it has by some recognized legal method been released formally from the agreed obligation": Collingdale Borough v. P. R. T., supra, p. 127. If this has not occurred, its liability continues, and may be equitably enforced. For another reason, also, the suggested jurisdictional question cannot be successfully raised. No such complaint was made prior to hearing in the court below, and the objection must therefore be treated as waived, even if it had merit: Act June 7, 1907, P. L. 440; Friedline v. Hoffman, 271 Pa. 530.

Appellants further insist it would be inequitable to sustain a decree for the plaintiff, under the facts presented. When the right to occupy the street was given, the company, as a part consideration, expended a large sum in improvement of the highway. The intent was to join with a suburban line, and thus establish a profitable feeder. This was accomplished, and for some years the operation was successful, but the receipts were largely reduced by a subsequent grant, by the borough, to another railway, of the privilege to construct a line on a parallel street. Defendants may have been injured by the entry of a competitor, but there was no exclusive franchise, and the municipality had not agreed to prevent others from furnishing service. It was unfortunate for defendants that the Lansdale Company, with which they formerly had connection, passed into the hands of others at foreclosure sale. This did not, however, relieve from the contract obligation to renew the roadway, though the diversion of traffic reduced the income. Further, this defense was not set up in the answer filed, and cannot be of avail now: Luther v. Luther, 216 Pa. 1.

It is argued that the contract under consideration cannot be enforced without approval of the Public Service Commission, since the effect of payment for a new highway would necessarily be reflected in the fares charged, or result in a reduction of service to the public, which brings the case within the purview of the Act of 1913 (July 26, 1913, P. L. 1374). This proposition has been the subject of recent discussion by our appellate courts (Borough of Swarthmore v. Pub. Serv. Com., 80 Pa. Superior Ct. 99, affirmed, 277 Pa. 472), and the able opinions filed so thoroughly answer the complaint that it is useless to do more than refer to what is there said. The commission can exercise only such authority as has been conferred upon it, either by specific words or necessary implication (Citizens Pass. Ry. Co. v. Pub. Serv. Com., 271 Pa. 39), and jurisdiction to pass on the reasonableness of agreements with municipalities, such as

here in question, was not granted by the Public Service Law.

In the answer filed, and, later, on hearing, the defendants offered to surrender their right on the street proposed to be paved, and remove the tracks, since further operation had become unprofitable. The court below held this could not be done, to escape liability, in the way proposed, and its ruling is complained of in the ninth assignment of error. Delay was granted, so that appropriate action might be taken by the railways to carry out their purpose, but no attempt to do so was made before final decree entered. A mere declaration of willingness to give up the franchise does not suffice. The duty which the company owes the public continues until relieved of its obligation in some legal way.

A public service corporation cannot be compelled to continue indefinitely operations which will result in the exhaustion of its assets: New York Trust Co. v. B. & L. E. Trac. Co., 183 N. Y. Supp. 278. When the railway cannot be run except at a loss, the owners may withdraw from the enterprise, but this must be done in the way provided by law. If the company desires to surrender all of its powers and franchises, and cease its corporate existence, then the application is to be made under the provisions of the Act of 1856 (Act April 9, 1856, P. L. 293). If the intention is merely to reduce the field of activity, by abandoning certain territory which it otherwise would be compelled to supply, the determination of the question is for the Public Service Commission: Peoples Nat. Gas Co. v. Pub. Serv. Com., 79 Pa. Superior Ct. 560. To it is committed the regulation of service, by which is meant the duty owed by the corporation to its patrons, employees and the public, in the performance of its charter obligations: Swarthmore Borough v. Pub. Ser. Com., 277 Pa. 472.

As was said, in part, by Judge KELLER, in pointing out this distinction: "The curtailment of service, the withdrawal of trains, the failure to supply equipment, the

cutting off of switches and branches, so long as the corporation retains its power to operate a railroad, are matters relating to the extent of service or operation, and are within the regulatory power of the commission. But the surrender of a chartered power is not a regulatory matter. It is the absolute relinquishment of the corporate franchise to the extent of the power surrendered, and, if the franchise is to do but one thing, is equivalent to a dissolution......We are of opinion that the Act of 1856 furnishes a full and complete method of procedure for corporations desiring to surrender their charter powers and quit business or dissolve, and that there is nothing in the Public Service Company Law, giving the commission power and authority to regulate corporations, which applies to such surrender or dissolution; the provisions of the act are limited to such corporations as continue to retain their powers and enjoy their franchises, in other words, to living corporations, or, in the words of the act, to those 'doing business' ": N. Y. & Pa. Ry. Co. v. Pub. Serv. Com., 72 Pa. Superior Ct. 523, 530. The same thought has been recently repeated by the Superior Court, when it said: "Subject to limitations, the power to prescribe headway, schedule or route may be conceded, because those practices relate to the performance of public duties which the company was incorporated to perform, but in those instances the service is affected directly by the exercise of the power of the commission": Swarthmore Borough v. Pub. Serv. Com., 80 Pa. Superior Ct. 99, 107, affirmed in 277 Pa. 472.

The change in extent of service is a matter for the commission, and, after investigation, it can determine whether a portion of the line, unprofitable in itself, may, in the interest of the public, be abandoned or continued at a risk of loss of entire service, because of the drain on revenues by operation of the unproductive branch. Such orders have been made in this State (Re Waverly, S. & A. Trac. Co., P. U. R. 1920 F, 673), and in others having like legislation: Re Reno Trac. Co., P. U. R. 1920 B,

178 ; Re Fresno I. R. Co., P. U. R. 1919 B, 684; Phoenix Ry. Co. v. Lount, P. U. R. 1922 D, 186. Notwithstanding the existence of contracts, evidenced by charters granted by the Commonwealth, or ordinances of municipalities, under some circumstances, the State, in the exercise of its police power, may alter the agreements, in the interest of the public, made by service corporations, and delegate to a commission the power to determine the rights of the respective parties, when the facts establish the necessity for so doing: Scranton v. Pub.Serv.Com., 268 Pa. 192; Fogelsville & T. E. Co. v. Penna. P. & L. Co., 271 Pa. 237. In Pennsylvania, a duly appointed body had been given jurisdiction to act in certain specified cases. Regulation of service comes within the purview of the Public Service Act, and it is for the commission to decide as to the need of continued operation of a spur or branch line by a railway company. A contrary conclusion would be reached, if the purpose is to surrender the charter and dissolve the company, for, in such case, the provisions of the Act of 1856 apply. In the present case, the defendants could have taken advantage of the method pointed out by law as applicable to its situation, and, had the Public Service Commission approved of the request after hearing all parties in interest, removed the track, but the mere statement in the court below of its desire to abandon was not sufficient; the ninth assignment must therefore be overruled.

Complaint is made of the final decree entered, as indefinite in its description of the material to be used in repaving. This objection is without merit. Even if there was doubt of the meaning, it was the duty of appellants to apply to the court below for clarification of the order, and thus remove any question it had as to the manner in which the work was to be done: Scranton v. Peoples Coal Co., 274 Pa. 63.

Without referring to each of the assignments of error, all are overruled.

The decree is affirmed at the costs of appellants.