Per Curiam,
 

 York Railways Company has appealed from the order of the Public Utility Commission, entered November 23, 1937, (1) refusing to register its certificate filed July 21, 1937, under Article YI, Section 601
 
 et seq.
 
 of The Public Utility Law,
 
 [1]
 
 extending the maturity of $5,000,-000 principal amount of its first mortgage 5% bonds, maturing December 1, 1937, for ten years from that date, (2) permitting the registration of such certificate as to the said extension of maturity of only $3,300,000 thereof, and (3) rejecting the certificate as to the extension of maturity of any bonds in excess of $3,300,000 principal amount.
 

 Because of the emergency confronting the company by reason of such action, it has requested a prompt decision of the appeal.
 

 All of the judges who heard the argument are of opinion that the order must be reversed and the record remitted to the Commission with direction to register the certificate as prayed for. Because of the need for a prompt decision of the matter we shall, at this time, do no more than enter the judgment and state our main reason for such action, leaving the filing of a more
 
 *129
 
 extended opinion, if deemed advisable, to a later date.
 

 The bonds referred to in the certificate are part of an issue of $10,000,000 5% first mortgage bonds dated December 2, 1907 and payable in thirty years, (December 1,1937), secured by a mortgage given to Guarantee Trust and Safe Deposit Company, now Tradesmans National Bank & Trust Company, by the appellant, a street railway company incorporated under the laws of the Commonwealth of Pennsylvania.
 

 As of May 31, 1937, $3,884,000 of these bonds had been retired, leaving $6,116,000 outstanding. The appellant in its amended certificate, and as presented to this court, proposed to reduce the outstanding bonds to $5,000,000, as of December 1,1937, and sought to extend the maturity of this amount for ten years, or until December 1, 1947, with provisions for the withholding of dividends and the application of surplus to the earnings for the retirement of additional bonds until the principal amount of the bonds is reduced to $4,000,000.
 

 In addition to the mortgage on the appellant’s property, the trustee under the mortgage holds as security for the bonds, all the outstanding stock of the Edison Light & Power Company — which is wholly owned by York Railways Company — a note of Edison Light & Power Company, in the amount of $1,066,559.48, which is the property of York Railways Company, and a substantial ownership in the notes or stock of York Steam Heating Company, Glen Rock Electric Light & Power Company, and NYPANJ, affiliated companies.
 

 The Commission, in a proceeding instituted on its own motion against said Edison Light & Power Company, has fixed a rate base valuation for the purpose of prescribing temporary rates, pending the determination of said proceeding, at $5,250,000, on which a return of 6%, or $315,000, annually has been allowed. The company is contesting in the Federal Court this proceeding,
 
 *130
 
 which reduces its annual revenue from $750,000 to $315,000.
 

 Appellant does not propose to issue any new bonds or securities, but asks authority to stamp on the bonds outstanding in the sum of $5,000,000 an extension of maturity for ten years, if the holders of said bonds are willing to allow such extension, and attach thereto twenty semi-annual coupons covering the interest payments.
 

 The record before us leaves no doubt that such an extension of maturity is “necessary for the present and probable future capital needs” of the company, within ^the language of section 603 of the Public Utility Law. In fact the attorney for the Commission, who very ably presented the argument for the Commission, admitted that unless the certificate of extension was registered ,in the amount of $5,000,000, — instead of the $3,300,000 registered by the Commission, — the appellant would be obliged to go into bankruptcy. That such a step would result in very great loss to the holders of these bonds there can be little doubt, and that the public service now being furnished by the appellant would be seriously interfered with, if not destroyed, is not open to question.
 

 The Public Utility Law (Sec. 603) requires the Commission to register the certificate, “if it shall find that the issuance......of securities in the amount, of the character and for the purpose proposed is necessary or proper for the present and probable future capital needs of the public utility filing such securities certificate.” The Commission’s reason for registering the certificate as to the extension of only $3,300,000 bonds and rejecting it as to the remaining $1,700,000, was that “in order to create a satisfactory relationship between the bonds to be extended and the assets upon which they are a lien the bonds should be reduced to $3,300,000 in principal amount.”
 

 This was presumably done under the provision imme
 
 *131
 
 diately following in said section: “The Commission may consider the relation which the amount of each class of securities issued by such public utility bears to the amount of other such classes, the nature of the business of such public utility, its credit and prospects and other relevant matters.”
 

 Passing by, at this time, the question raised by the appellant as to the constitutionality of Section 601 of the Public Utility Law, particularly as affecting a mere extension of the time of payment of an existing obligation, it seems clear to us that the provision in the act just quoted is dealing with the consideration by the Commission of the issue of new, additional or substituted securities which may affect the capital structure of the utility company to the injury of the public served by it. It contemplates the
 
 reasonable
 
 regulation of securities to be issued by the utility company, in the interest, and to the benefit and advantage, of the public served by the utility company. Neither it nor the earlier provision in the same section extending the meaning of the term, “issuance of securities,” so as to include the making of “any change in any term or condition of, any stock certificate, or other evidence of equitable interest in itself, or any bond, note, trust certificate, or other evidence of indebtedness of itself,” furnishes any ground on which to base an order, that is of benefit to neither the public nor the utility company and the natural and probable consequences of which will be the ‘death’ of the utility company, the stopping of its service to the public and considerable loss to its security holders.
 

 It must be remembered that the Public Utility Law is not a “Blue Sky” law. The “public” for whose convenience, accommodation, safety and protection the act is concerned is the public who use or desire to use the service and facilities of the utility company, or of some other utility company, and who may be affected by the
 
 *132
 
 operation of the public utility. It does not refer to the general investing public. Whatever benefit or advantage may accrue to the investing public is incidental only to the main purpose of regulating public utility companies in the interest of securing to the public, using and desiring to use them, reasonably adequate service and facilities at fair and reasonable and non-diseriminatory rates.
 

 Viewed in this light what possible benefit can accrue to either the public using the service and facilities of the appellant, or the holders of its bonds, by an order which will result in throwing a going public utility, which had always met the interest on its obligations and materially reduced the principal, into bankruptcy, disrupting, if not destroying, its service and causing considerable loss to the holders of its bonds?
 

 We conclude that the reason given by the Commission for rejecting the registration of the certificate as to all bonds in excess of $3,300,000 is without reasonable justification in the act; that the determination of the Commission is not supported by evidence, and that the order is so arbitrary and unreasonable as to amount to error of law.
 

 The 11th, 12th, 13th, 17th and 19th assignments of error are sustained. The order is reversed, and the .record is remitted to the Commission with directions to register the certificate for the extension of maturity for $5,000,000 bonds as prayed for. Costs to be paid by the Pennsylvania Public Utility Commission.
 

 [1]
 

 Act of May 28, 1937, P. L. 1053,