West Penn Railways Company, Appellant, *v.*
Pennsylvania Public Utility Commission.

Argued October 6, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Edward O. Tabor,* with him *Kenneth M. Bixler,* for appellant.

*Samuel Graff Miller,* with him *Edward Knuff,* for appellee.

*Guy K. Bard,* Attorney General, *George W. Keitel,* Assistant Deputy Attorney General, and *Forrest Mercer,* for intervenor.

OPINION BY RHODES, J., March 3, 1939:

West Penn Railways Company has appealed from two orders of the Pennsylvania Public Utility Commission. By the one order, No. 55, April Term, 1939, dated March 22, 1938 (modification refused May 9, 1938), the commission approved the application of appellant for leave to discontinue street railway service and abandon its street railway line on its McKeesport division, located in the city of McKeesport, the township of Versailles, and the borough of Versailles, in Allegheny County, and in the borough of Irwin, and the township

of North Huntingdon, in Westmoreland County, subject to seven conditions. By the other order, No. 72, April Term, 1939, dated May 31, 1938, and served on June 6, 1938, the commission denied approval of a contract between appellant and the city of McKeesport, executed June 16, 1937, in which it was agreed, inter alia, that appellant was to pay the city $40,000; that the city was to join with appellant in the petition to the commission for the abandonment of service in the McKeesport division of appellant; that appellant was to be released from all obligations to pave, repave, or reset rails; that the abandoned track of appellant was to remain in place on the streets, and become the property of the city; and that appellant was to remove its trolley wires, feeders, and appurtenances and such poles as were not used by other utilities.

The conditions in the order of March 22, 1938, are as follows:

"1.  That West Penn Railways Company forthwith pay to the City of McKeesport the sum of $40,000.

"2.  That West Penn Railways Company leave in place all track in Walnut Street in the City of McKeesport, and in all other streets in the city, embraced in the instant application; West Penn Railways Company shall burn off all rail heads and repave the grooves thus created with suitable bituminous material level with adjacent paving; the work to be done under the supervision of the authorized agent of said city.

"3.  That West Penn Railways Company remove all rails and accessories, poles, wires and other facilities, excepting those used by other utilities, from all portions of paved streets, roads or highways under the jurisdiction of the State Highway Department and the area so disturbed shall be repaved with suitable materials conforming to the existing adjacent paving; this work to be done in accordance with specifications and under the supervision of the State Department of Highways.

"4.  That West Penn Railways Company remove all

rails and accessories, poles, wires and other facilities, excepting those used by other utilities, from all portions of paved streets, roads or highways under the jurisdiction of Allegheny County authorities, and the area so disturbed shall be repaved with suitable materials conforming to the existing adjacent paving; this work to be done in accordance with specifications and under the supervision of the county engineer.

"5. That West Penn Railways Company remove all rails and accessories, poles, wires and other facilities, excepting those used by other utilities from all portions of paved streets, roads or highways in the Borough of Irwin, and the area so disturbed shall be repaved with suitable materials conforming to the existing adjacent paving; this work to be done in accordance with specifications and under the supervision of the authorized agent of said borough.

"6. That, upon removal of rails and accessories in open construction when abutting on the highway, the right of way shall be leveled off and placed in a passable condition.

"7. That the approval herein granted shall become effective only upon the beginning of substitute bus service by Penn Transit Company, in accordance with our approval granted concurrently at A. 14172, F. 37."

The certificate of public convenience, dated March 22, 1938, set forth that the commission "found and determined that the granting of said application is necessary or proper for the service, accommodation, convenience and safety of the public, and this certificate is issued evidencing its approval of the said application as set forth in said report and order."

There is ample evidence in the record to support the determination of the commission that the abandonment of appellant's street railway service over the routes specified in its application was necessary and proper.

Appellant's contentions are that the commission has no authority to fix repaving and rail removal condi-

tions after abandonment, and that the action of the commission disapproving the contract between appellant and the city of McKeeesport was arbitrary and illegal. We shall consider and dispose of both appeals in this opinion.

(1) Abandonment case. The Public Utility Law, Act of May 28, 1937, P. L. 1053, art. 2, §202, 66 PS §1122, provides in part as follows: "Upon approval of the commission, evidenced by its certificate of public convenience first had and obtained, and upon compliance with existing laws, and not otherwise, it shall be lawful: ...... (d) For any public utility to dissolve, or to abandon or surrender, in whole or in part, any service, right, power, franchise, or privilege ......" Article 2, §203(a), 66 PS §1123(a), of this act also provides: "A certificate of public convenience shall be granted by order of the commission, only if and when the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public; and the commission, in granting such certificate, may impose such conditions as it may deem to be just and reasonable."

It is by virtue of these powers that the commission contends that it is authorized to impose the conditions in question. It also appears to be the position of the commission that it has the right and duty to provide for the safety and comfort of the public in general by prescribing conditions requiring the removal of overhead facilities, the removal or alteration of tracks, and the repaving with suitable materials conforming to the existing adjacent paving of the invaded streets or highways in granting approval of appellant's application for abandonment of its service. On behalf of the commission it is argued that the word "safety" in sections 203(a), 66 PS §1123(a), 401, 66 PS §1171, and 413, 66 PS §1183, of the Public Utility Law refers to the safety of the public generally. In *York Railways Com-*

*pany v. Pennsylvania Public Utility Commission,* 131 Pa. Superior Ct. 126, at page 131, 198 A. 920, at page 922, a case dealing with the securities of a public utility company, in an opinion by President Judge KELLER, this court said: "The 'public' for whose convenience, accommodation, safety and protection the act is concerned is the public who use or desire to use the service and facilities of the utility company, or of some other utility company, and who may be affected by the operation of the public utility. It does not refer to the general investing public." Under the provisions of the Public Utility Law above mentioned, the commission is to determine whether the abandonment of a public utility's service, or any part thereof, is necessary or proper—that is, advantageous—for the service, accommodation, convenience or safety of the public.

Article 17, §9, of the Constitution of Pennsylvania provides that: "No street passenger railway shall be constructed within the limits of any city, borough or township without the consent of its local authorities." Conditions imposed by city, borough, or township upon a street railway company as a prerequisite of entry become contractual obligations, which must be complied with unless stricken down by some proper legislative exercise of the police power. *Collingdale Borough v. Philadelphia Rapid Transit Co.,* 274 Pa. 124, 127, 117 A. 909; *Borough of Carlisle v. Public Service Commission,* 81 Pa. Superior Ct. 475, 479. While a street railway company occupies a street with its tracks an obligation to repair the street imposed by contract will be enforced. *Norristown v. Reading Transit & Light Co. et al.,* 277 Pa. 459, 121 A. 495. In *Reading v. United Traction Co.,* 215 Pa. 250, 64 A. 446, it was held that a street railway company was bound to keep the portions of streets occupied by its right of way in good condition, even in the absence of any express contract or statutory direction to that effect. It also held, page 255, that: "It is because the municipality, as the agent

of the state, has charge of the streets, that it must maintain and keep them in proper repair, and when the state permits this charge, as to a portion of a street, to be committed to another, it must be understood as imposing upon such party the responsibility that formerly rested upon the municipality, unless in the grant, or in the municipal consent thereto, of the right to use a portion of the street, such responsibility is expressly withheld and its imposition continued upon the municipality." The state in the exercise of the police power under article 16, §3, of the Constitution may alter agreements evidenced by charters, ordinances or other contracts, in the interest of the public, made by public service companies, and delegate to the commission the power to determine the rights of the respective parties, when the facts establish the necessity for so doing (*Norristown v. Reading Transit & Light Co. et al.*, supra, p. 466; *City of Scranton v. Public Service Commission et al.*, 268 Pa. 192, 110 A. 775; *Fogelsville & Trexlertown Electric Co. v. Pennsylvania Power & Light Co.*, 271 Pa. 237, 114 A. 822) ; but where, as here, operation by the street railway company ceases, franchise and other contractual rights and obligations apply thereafter. The commission, for example, may make inoperative a franchise provision fixing the rates of an operating utility (*City of Scranton v. Public Service Commission,* supra) ; this is a proper exercise of its delegated power. See article 3 of the Public Utility Law, 66 PS §1141 et seq. As conditions precedent to appellant's discontinuing service on certain streets and highways, the commission could not create any new rights or impose any higher obligations or greater burdens on appellant than those existing at the time of discontinuance by virtue of its charter, franchises, contracts, or the common law. The repaving, resurfacing, and rail removal conditions (2, 3, 4, 5, and 6), which the commission imposed after it had determined the discontinuance of service sought by appellant, and

as described in its application, to be necessary in the public interest, are not predicated on appellant's legal obligations, but the conditions were imposed in pursuance of the commission's policy that "no street railway company shall abandon service unless, and until it shall remove its tracks, poles, wires and other facilities from the improved portion of the highway, and restore that portion of the highway previously occupied by its track and other facilities, so as to conform with the remaining surface of the roadway." See *Erie Lighting Co. et al. v. Pennsylvania Public Utility Commission*, 131 Pa. Superior Ct. 190, 198 A. 901; *Interstate Commerce Commission v. Goodrich Transit Co.*, 224 U. S. 194, 214, 32 S. Ct. 436, 441.

It is argued on behalf of the commission that even if performance of the conditions should incidentally require more or less than expressly required by a franchise contract this effect would be irrelevant, since promotion of the public safety is as conducive, if not more conducive, to the general well being of the Commonwealth as the assurance of reasonable rates. Section 920 of the Public Utility Law, 66 PS §1360, provides for the modification of contracts by order of the commission, after hearing. If applicable, the commission has made no attempt to modify any contract involved in the instant case in the manner prescribed in that section.

There is a clear distinction between the modification or reformation of a franchise fixing rates to be charged by an operating utility and varying or setting aside a franchise provision prescribing the duty of a street railway company to a municipality on cessation of operation and abandonment of its lines in that municipality. Rate making, an appropriate exercise of the legislative power, has been delegated to the commission. The principles governing change by the commission of rates fixed by franchise, ordinance, or agreement need not be repeated. See *Scranton v. Public Service Com-*

*mission et al.,* supra; *Dormont Borough v. South Pittsburgh Water Co.,* 322 Pa. 60, 185 A. 263. In *Swarthmore Borough v. Public Service Commission et al.,* supra, 277 Pa. 472, at page 479, 121 A. 488, at page 490, it was held: "Under our decisions to date, contracts made by public service corporations have been held subject to revision only in so far as they deal directly with rates, and agreements of this character have been so held because article V, section 3, of the Public Service Company Law clearly grants that revisory power to the commission. So far as our cases show, contractual obligations of the nature of the one here involved have been treated as though not within the jurisdiction of the commission, and, accordingly, enforced by the courts (*Sayre Boro. v. Waverly, etc., Trac. Co.,* 270 Pa. 412 [113 A. 424]; *Chambersburg Boro. v. Chambersburg & Gettysburg Elec. Ry. Co.,* 258 Pa. 57 [101 A. 922])."

After a street railway company ceases its operation and the rendering of service to the public in a municipality, pertinent franchises, ordinances, and contracts between the company and the municipality are determinative of the respective rights and obligations, and they may not be varied or set aside and other rights granted and obligations imposed unless there is legislative power over the subject-matter and such power delegated to the commission. The statute is silent on the subject. See *Blue Mountain Consolidated Water Co. v. Public Service Commission,* 125 Pa. Superior Ct. 1, 8, 189 A. 545.

In its report and order the commission states: "To permit these abandoned tracks to remain in place would constitute a hazard not only to the substitute bus operation, which will be over portions or all of such streets, but also would constitute a hazard to all vehicular traffic and would, therefore, endanger the safety of the public." This is an assumption on the part of the commission which may or may not be true. The com-

mission's power to act by way of order requires findings of fact, based on the evidence, necessary to support the order. The area of administrative activity is not boundless; the commission's power is statutory; and the legislative grant of power to act in any particular case must be clear (*Day v. Public Service Commission et al.*, 312 Pa. 381, 384, 167 A. 565). The Public Utility Law gives the commission no clear or specific power to provide for general highway safety. This is a matter thus far entrusted to other agencies.

Condition 1 in the order of March 22, 1938, requires appellant to pay the city of McKeesport $40,000. The commission's brief offers no explanation or argument in support of this condition, and we find no justification for its imposition. Condition 2 would deny appellant the benefits intended to result from such payment under the agreement of June 16, 1937, between appellant and the city of McKeesport, and which agreement the commission has refused to approve. Obviously these conditions produce an anomalous situation. No objection is raised to condition 7 which provides that the approval of the application for abandonment shall become effective only upon the beginning of substituted bus service by Penn Transit Company.

If the abandonment of a portion of appellant's lines is necessary or proper for the service, accommodation, convenience, or safety of the public, as determined by the commission, the respective rights and obligations which exist or arise by law or contract upon the discontinuance of such service are enforceable by judicial process. We recognize the broad power of the commission in the supervising and regulating of utilities, which includes the commission's control of the abandonment of any service, right, power, franchise or privilege of any public utility; but such power does not extend to the creation and enforcing of new rights and obligations after abandonment solely on the basis of a declared policy.

The commission may, under section 203(a), 66 PS §1123, of the Public Utility Law, attach conditions to abandonment of the tracks and service of a street railway company, but such conditions cannot raise the standard of duty fixed by law. The conditions which may be imposed must be reasonable and be supported by the evidence, and they cannot interfere with the constitutional and statutory powers of the municipalities. See Act of June 23, 1931, P. L. 932, art. 29, §§2915, 2930, 53 PS §§12198-2915, 12198-2930; *Setzer v. City of Pottsville,* 73 Pa. Superior Ct. 573; *Com. v. Kennedy,* 129 Pa. Superior Ct. 149, 163, 195 A. 770.

Conditions 1, 2, 3, 4, 5, and 6 cannot be sustained in their present form. Although appellant presented testimony that upon abandonment it would remove all trolley wires, feeders, signals, and telephones, and such poles as were not used generally by other utilities or for fire alarm systems, at its own cost and expense, they contain matters based only on the commission's policy and having no evidential support in the record. It refused to recognize appellant's contention that its repaving obligations depended upon franchises, obligations growing out of rights of way in fee, and various agreements with the municipalities. As to the first, second, third, fourth, fifth, and sixth conditions the order of the commission of March 22, 1938, is set aside. Otherwise, the order is affirmed, subject to the imposition of conditions by the commission, after hearing, requiring appellant, outside of the city of McKeesport, to comply with its franchises and contractual obligations and legal duty on abandonment. For such purpose the record is remitted. The commission may properly pass upon these matters in connection with abandonment in the first instance. See *St. Clair Borough v. Tamaqua & Pottsville Electric Co. et al.,* 259 Pa. 462, 103 A. 287; *Pittsburgh Railways Co. et al. v. Public Service Commission et al.,* 115 Pa. Superior Ct. 58, 174 A. 670.

(2) Contract case. The commission in its brief has

stated that should this court find "that the Commission erred in imposing conditions precedent to abandonment, then the Commission has also erred in disapproving the contract."

Approval of the contract was sought by appellant as provided by section 911 of the Public Utility Law of May 28, 1937, P. L. 1053, art. 9, 66 PS §1351. The contract recited that under various franchise ordinances certain paving obligations had been incurred by appellant, and were still existing. In consideration of the payment of $40,000 by appellant and the leaving of its tracks in place to become the property of the city, over which service was to be discontinued, the city agreed to relinquish all claims against appellant by reason of the provisions for paving or repaving or resetting of rails under said franchise ordinances. The record before the commission consisted of the contract and appellant's application for approval. The order of the commission refusing to approve the contract is, like conditions in the order of March 22, 1938, as to abandonment, based on the declared policy of the commission. See section 1005, art. 10, of the Public Utility Law, 66 PS §1395; *Pennsylvania Power & Light Co. v. Public Service Commission et al.,* 128 Pa. Superior Ct. 195, 218, 193 A. 427. In the commission's brief it is said: "No hearing was necessary in connection with the contract here involved, since its provisions were clearly contrary to the requirements found necessary by the commission in the interest of public safety." However, the commission's order is not supported by any evidence or by any principle of law. See *Erie Lighting Co. et al. v. Pennsylvania Public Utility Commission,* supra; *Morgan et al. v. United States of America et al.,* 304 U. S. 1, 82 L. Ed. 1129; *Pennsylvania Railroad Co. v. Public Service Commission,* 69 Pa. Superior Ct. 404. Section 1910, art. 19, of the Act of June 23, 1931, P. L. 932, 53 PS §12198-1910, authorizes any city of the third class (city of McKeesport) to enter into an agreement with a street railway

company "affecting, fixing, and regulating the franchises, powers, duties, and liabilities of such companies, and the regulations and respective rights of the contracting parties," and to "provide for payments by the companies to the city in lieu of the performance of certain duties or the payment of license fees or charges imposed in favor of such city, by the charters of the respective companies, or by any general law or ordinance ......" Such contracts, however, are "subject to the provisions of the Public Service Company Law." The contract between appellant and the city of McKeesport was legal and was within the power of the city to make, subject to the commission's approval. The commission cannot arbitrarily refuse approval of it. The commission's orders would result in appellant's paying the consideration in the contract to the city of McKeesport without receiving the benefits of the contract. The commission's contention that this contract on its face was inconsistent with the safety of the public generally is without merit.

The order of the commission is reversed, and the record is remitted to the commission with direction to approve the contract. Cost of the appeal (No. 72, April Term, 1939) shall be paid by the Pennsylvania Public Utility Commission.