## City of Philadelphia v. Holmes Electric Protective Co. of Philadelphia

514

*Abraham Wernick*, assistant city solicitor, and *Francis F. Burch*, city solicitor, for plaintiff.

*Benjamin O. Frick*, for defendant.

CRUMLISH, J., July 29, 1941.—

1. Plaintiff, a municipal corporation, instituted this suit in assumpsit to collect certain amounts alleged to be due from defendant under the terms of certain ordinances adopted by the legislative branch of the city government. The statement of claim sets forth that on June 4, 1906, at the request of defendant corporation, the Select and Common Councils of the City of Philadelphia adopted an ordinance granting permission to defendant to carry its wires under and beneath the highways of the City of Philadelphia for connecting buildings occupied by its customers with its central station, and to use and operate such of its wires as are now strung and carried over, through, and under the highways of the said city, as well as those which it shall hereafter, under the authority of this ordinance, carry under and beneath the highways of the said city for the purpose of conducting the business of conveying for its customers a burglar alarm, night watch, and fire alarm signal system. (Ordinances of Council (1906), p. 105.)

Sections 3 and 4 of the said ordinance provide as follows:

"Sect. 3. The Director of the Department of Public Safety is hereby authorized to permit the said Holmes Electric Protective Company of Philadelphia, to connect their central stations with the operating room of the Electrical Bureau, and to maintain such connections only for so long a time, as in the judgment of the

Director of the Department of Public Safety it shall be for the best interest of the City; and the said Holmes Electric Protective Company shall remove and discontinue all connections with the said Electrical Bureau within ten days after notice to make such removal, or to discontinue such connection, shall have been given the said Company by the Director of the Department of Public Safety, and should the Company fail to make such removal, the said Director shall have the right to do so at the expense of said Holmes Electric Protective Company.

"Sect. 4. The privilege hereby granted may at any time be revoked by ordinance of Councils, and shall, at all times, be exercised and maintained, subject to the approval of the Electrical Bureau and any violation of the terms of this ordinance by said Holmes Electric Protective Company shall be deemed and taken to work a forfeiture of the privileges hereby granted."

Section 5 of the said ordinance provided, inter alia, that defendant company ". . . shall pay into the Treasury of the City of Philadelphia two percent. of the gross receipts of said Corporation up to thirty thousand (30,000) dollars and three percent. thereafter up to forty thousand (40,000) dollars, and five percent. thereafter from all its business done in the said City of Philadelphia. . . ."

On November 2, 1921, an amendatory ordinance (page 355) was adopted by council of the city amending sections 4 and 6 of the Ordinance of June 4, 1906, supra, as follows:

"Sect. 4. The privilege hereby granted shall, at all times, be exercised and maintained, subject to the approval of the Electrical Bureau, and any violation of the terms of this ordinance by the said Holmes Electric Protective Company, unless remedied after reasonable written notice thereof given to the said Holmes Electric Protective Company, shall be deemed and taken to work a forfeiture of the privileges hereby granted."

Section 6 thereof provided, inter alia, that ". . . no right, franchise or privilege here granted shall be assigned, transferred to, nor otherwise howsoever acquired nor participated in by any other company or person, nor shall the said Holmes Electric Protective Company permit or suffer any other Company or person to use or operate any of its said wires, and immediately upon any such assignments, transfer, merger or use of its wires by any other person or company, all the rights, franchises and privileges hereby granted shall become null and void . . ."

On June 22, 1937, Council of the City of Philadelphia adopted an ordinance granting permission to the Owl Protective Company, a corporation, to use the city streets for its underground wires for the purpose of conducting a burglar alarm system, similar to the one heretofore conducted by defendant, and provided in section 5 of the said ordinance that the Owl Protective Company shall pay into the treasury of the City of Philadelphia on the first day of August in each and every year hereafter five percent of its entire gross receipts of the preceding year. (Ordinances (1937), p. 326.)

On July 8, 1937, Council of the City of Philadelphia adopted an ordinance amending, inter alia, section 5 of the Ordinance of June 4, 1906, as follows:

". . . the said Holmes Electric Protective Company shall pay into the Treasury of the City of Philadelphia, on the first day of August in each and every year hereafter, five per cent. of its entire gross receipts of the preceding year from the exercise, directly or indirectly, of any or all of the rights and privileges granted by this ordinance." (Ordinances (1937), pp. 372, 374.)

Since the passage of the Ordinance of 1906, supra, defendant has been operating the burglar alarm business within the City of Philadelphia. Plaintiff municipality claims the five percent of the gross receipts of defendant company is $20,949.52, on account of

which defendant has paid the sum of $13,684.77, leaving a balance due of $7,264.75.

The affidavit of defense admits the essential facts averred in the statement but alleges that the contract between the parties is that set forth in the Ordinance of 1906, as amended by the Ordinance of 1921, and duly accepted by it; that the Ordinance of July 8, 1937, is ineffective to amend this contract and further that such amendment has not been accepted by it; that the Ordinance of 1937 is violative of both the Federal and State Constitutions in that it impairs the obligation of the contract between the parties; that it has paid the amount due plaintiff municipality under the Ordinance of 1906, as amended in 1921, and, therefore, owes plaintiff no further sum.

2. The matter is now before us on a rule for judgment for want of a sufficient affidavit of defense. On the state of the record, it might very well have come before us on an affidavit of defense raising questions of law.

3. The Ordinance of 1906 was before the Supreme Court in the case of Philadelphia v. Holmes Electric Protective Company of Philadelphia, 335 Pa. 273 (1939), which was an action to recover the rentals under the Ordinances of 1906 and 1921, less amounts paid down to the date of the suit in 1937. The Ordinance of 1937 was not involved in the case since it had not been passed at the time suit was brought. One of the defenses was the statute of limitations and it was alleged on behalf of plaintiff that the statute did not apply because the City of Philadelphia acted in a governmental capacity rather than in a private capacity. Incidentally, it may be said that the Ordinance of 1921 was not mentioned in the opinion in this case because it had no bearing on the question there presented but an examination of the paper books in that case show that it was before the court. (See paper books 335 Pa. 273, plaintiff's statement of claim, p. 4a.) The Supreme

Court in an elaborate opinion by Mr. Justice Stern held that the obligation arose out of an agreement voluntarily entered into by defendant and that therefore the statute applied. In the course of his opinion, Mr. Justice Stern used the following language concerning the rights and liabilities under this particular ordinance (p. 279) :

"When such an ordinance is accepted and acted on by the grantee of the privilege the corporation becomes contractually bound to pay the consideration and perform the terms and conditions specified in the ordinance, and the contract thereby formed has the same legal status as any other contract: Norristown v. Norristown Passenger Railway Co., 148 Pa. 87, 89; Collingdale Borough v. Philadelphia Rapid Transit Co., 274 Pa. 124, 127; Norristown v. Reading Transit & Light Co., 277 Pa. 459, 462; Valley Railways v. Harrisburg, 280 Pa. 385, 392; City of McKeesport v. McKeesport & Reynoldton Passenger Railway Co., 2 Pa. Superior Ct. 242, 248; Sandy Lake Borough v. Sandy Lake & Stoneboro Gas Co., 16 Pa. Superior Ct. 234, 240, 241; Carlisle & Mechanicsburg Street Railway Company's Appeal, 54 Pa. Superior Ct. 311, 317; West Penn Railways Co. v. Pennsylvania Public Utility Commission, 135 Pa. Superior Ct. 89, 95; City of Chicago v. Chicago Telephone Co., 230 Ill. 157, 163, 82 N. E. 607, 610; see also Metropolitan R. R. Co. v. District of Columbia, 132 U. S. 1, 12, 13; Asbury Park & Sea Girt Railway Co. v. Township Committee, 73 N. J. Eq. 323, 334, 335, 67 A. 790, 794, 795. The obligation of such a contract is protected by the provision of both the State and Federal constitutions against impairment: Russell v. Sebastian, 233 U. S. 195, 204."

We, therefore, have the pronouncement of the Supreme Court of Pennsylvania that the obligation of this contract is protected by the provisions of both the State and Federal Constitutions against impairment. It is obvious that the rights of defendant under the Ordinances of 1906 and 1921 were not merely those of li-

censee but were those of a property owner. This was decided by Justice Lurton in City of Owensboro v. Cumberland Telephone & Telegraph Co., 230 U. S. 58, 64, 66 (1913), and was also pointed out by Justice Stern in a note in Philadelphia v. Holmes Electric Protective Company of Philadelphia, supra, at the bottom of page 279, where he makes a clear distinction between the license or permit and the contract arising from the acceptance of the right granted by a municipality.

4. The case, therefore, presents the question whether or not a municipality can change the rental to be paid by the grantee for the right to locate wires in the city street where the ordinance granting that right has been accepted by the grantee.

5. Plaintiff alleges several reasons why the City of Philadelphia has a right to change the rate to be paid by defendant, which will be considered in order.

(a) It is first argued that although the 1921 ordinance repealed in express words the revocable provision of the 1906 ordinance, yet the right of revocation remains because section 4 of the 1921 ordinance provided that "The privilege hereby granted shall, at all times, be exercised and maintained, subject to the approval of the Electrical Bureau . . ." It is not alleged that the electrical bureau has ever given notice to defendant of its disapproval of the manner in which defendant conducts its business; so, the question whether or not the electrical bureau could revoke the privileges of defendant without showing some good reason therefor does not arise in this case. Irrespective of this, it would seem to be a remarkable principle of construction of an ordinance of council to say that, where a provision giving the said right of revocation is expressly repealed, the same ordinance could be construed as retaining such right of revocation on the part of the city. It seems, therefore, apparent to us that subsequent to the 1921 ordinance the city had no right of revocation.

(*b*) Plaintiff then contends that, even admitting that the 1921 ordinance was irrevocable, the city had the right to change the rate under the police power which so far as the use of streets and city property is concerned may be admitted to exist in a municipality. The question of the police power of Philadelphia was considered at length in the case of Philadelphia Electric Co. v. Philadelphia, 301 Pa. 291 (1930). In that case, the Philadelphia Electric Company had laid its conduits in Broad Street pursuant to several ordinances of council. When the Broad Street Subway was built in 1924, it was necessary to relocate these conduits and council placed the cost of said relocation on the Philadelphia Electric Company. When the question came before the Supreme Court, the contention of the city was sustained: (1) on the ground of police power, and (2) on the ground of an acceptance by the Philadelphia Electric Company rendering it subject to the provisions of the ordinance of relocation. Mr. Justice Frazer uses the following language on page 298:

"The right of plaintiff to enter upon Broad Street and lay its conduits beneath the surface rests, accordingly, upon contract, subject however to the police power of the city and its rights under its charter which continued its full control and supervisions over all its thoroughfares. The chief sphere of the action of the police power, being a function of government, concerns immediately a restriction on the use of property or the conduct of persons that may be detrimental to public health, morals or safety."

Also on page 299:

"Before these imposing public necessities, private rights may not stand as a barrier; and in the present instance the conduits were subject to the regulatory control of the municipality under its police power. (Springfield Con. Water Co. v. Phila., 285 Pa. 172, 175; Pittsburgh v. Gas Co., 34 Pa. Superior Ct. 374)."

In this case, if the Ordinance of 1937 had been an exercise of the police power of the City of Philadelphia, it would doubtless be sustained under the case of Philadelphia Electric Co. v. Philadelphia, supra, but it does not purport to be such and cannot be so characterized. To say that if the city desires more money and attempts to secure it by increasing the amount due it by one of its contractees or any other citizen or corporation doing business with it it is an exercise of police power, then the police power would be boundless.

(c) Plaintiff then contends that, where a municipality grants a franchise for a certain annual sum, the city is not prevented from afterwards levying a tax or license fee in the absence of express waiver of this right in the contract and cites for this principle City of St. Louis v. United Railways Co., 210 U. S. 266 (1908), and Puget Sound Power & Light Co. v. Seattle, 291 U. S. 619 (1934). This may be conceded but the trouble is that the Ordinance of 1937 was not a taxing or licensing order. It did not purport to be such on its face; it applied merely to defendant in this case and not to any other corporation or individual and was exactly of the character of the ordinances in the Boise Artesian Hot and Cold Water Co. v. Boise City, 230 U. S. 84 (1913), a case where, by an Ordinance of 1889, the city had granted to two individuals and their successors the right to lay and repair their water pipes along the streets and lanes of the city. The rights of the grantees had passed to the Boise Water Company in 1906. The city attempted to exact a monthly license of $300 for the use and occupancy of the streets and lanes and the Supreme Court of the United States held that this could not be done. In fact, our Supreme Court has passed on the character of the payments under the Ordinance of 1906, as amended by the Ordinance of 1921. In the case of Philadelphia v. Holmes Electric Protective Co., supra, Mr. Justice Stern said at the bottom of page 278:

"But the consideration exacted in the ordinance is neither a tax nor a license fee; it is in the nature of an annual rental to be paid for the privilege of the use of space under the streets. . . ."

In view of this language, we do not see how it can be held that the Ordinance of 1937 can be considered as a taxing or licensing ordinance when it is merely a change in the rental for the use of space under the streets.

6. Accordingly, the rule for judgment for want of a sufficient affidavit of defense is discharged.